UNITED STATES of America,
Appellant,

v.

Howard PERRY, Glen Hagen, James
Geran, Kevin Dorr.

UNITED STATES of America,
Appellants,

v.

Howard PERRY and Gary Moore.

Nos. 85–3671, 85–3680.

United States Court of Appeals,
Third Circuit.

Argued Jan. 17, 1986.

Decided April 7, 1986.

Rehearing and Rehearing In Banc
Denied April 30, 1986.

---

Allen N. Brunwasser (argued), Pittsburgh, Pa., for Howard Perry.

J. Alan Johnson, U.S. Atty., Constance M. Bowden (argued), Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

Before GIBBONS, HIGGINBOTHAM, and BECKER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

The United States appeals from an order of the district court reversing a magistrate's order that Howard Perry be held without bail pending disposition of a criminal complaint. The magistrate had jurisdiction to enter the detention order by virtue of 28 U.S.C.A. § 636(a)(2) (West Supp. 1985). The district court reviewed the order pursuant to 18 U.S.C.A. § 3145(b) (West 1985). We have appellate jurisdiction by virtue of 18 U.S.C.A. § 3145(c) (West 1985) and 28 U.S.C. § 1291 (1982). We reverse.

### I.

#### Proceedings in the District Court

On November 21, 1985 a criminal complaint, No. 85–253M, was filed charging Howard Perry and Gary Moore with conspiring to possess heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982) and 21 U.S.C. § 846 (1982). The United States then moved pursuant to 18 U.S.C.A. § 3142(e) (West 1985) for pretrial detention of Perry on the ground that he was a danger to the community. Based on the evidence presented at a hearing the magistrate found that there was probable cause to believe that Perry committed the offense charged, for which a maximum term of ten years or more is prescribed. The magistrate also found that at the time of the events charged in the complaint Perry was on bail on a state indictment charging him with

distributing narcotics and was under court supervision for conviction on gun charges in Illinois. Thus Perry fell within the provision that "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community...." 18 U.S.C.A. §§ 3142(e), 3142(f)(1)(C) (West 1985). The magistrate held that this presumption was not rebutted.[1]

On November 27, 1985 Perry sought review by the district court, pursuant to 18 U.S.C.A. § 3145(b) (West 1985), of the magistrate's detention order. On December 5, 1985 the district court held a *de novo* detention hearing. During that hearing the district court stated that the only legitimate criterion for holding a defendant without bail was the likelihood of flight, a ground upon which the United States did not initially rely. According to the district court, the detention feature of the Bail Reform Act of 1984, Pub.L. No. 98–473, §§ 202–210, 98 Stat. 1976–87 (to be codified at 18 U.S.C. §§ 3062, 3141–3150), was facially unconstitutional, both substantively and procedurally. Thus the court declined to consider anything but Perry's likelihood

of flight. When Perry testified that he would not flee, the court orally set bail at $100,000.

Meanwhile, on December 2, 1985, a grand jury in the Western District of Pennsylvania returned a ten-count indictment, No. 85–263, against Perry and others, charging them with conspiracy to distribute and possession with intent to distribute cocaine, marijuana, and oxycodone (percodan). The district judge learned of this indictment after the conclusion of the section 3145(b) hearing in No. 85–253M and determined to hold a detention hearing on the new charge. During this second hearing the judge reiterated his views about the unconstitutionality of the preventive detention features of the Bail Reform Act and again concluded that Perry was not likely to flee.

Although no formal order had yet been entered either in No. 85–253M or in No. 85–263, the United States moved for a stay of the decision to grant bail, which the district judge orally denied.

On December 6, 1985, the district judge filed a hand-written order covering both detention hearings.[2] Although the court

---

1. The magistrate also found that Perry would be likely to flee. The government, however, did not rely on likelihood of flight before the magistrate and does not rely on likelihood of flight in this appeal.

2. The order provides:
 And now this 5th day of December 1985 after a full hearing and argument this Court in both of the above mentioned cases finds:
 1. That the Defendant Howard Perry took the stand and rebutted any and all legal presumption that he would flee the jurisdiction and to the contrary he satisfies this Court affirmatively (despite any presumptions to the contrary) that he will faithfully and properly attend all scheduled hearings or trials in the above captioned cases and would not flee.
 2. That the Defendant Howard Perry took the stand and rebutted any and all legal presumptions that he, Howard Perry will be a serious risk to obstruct or attempt to obstruct justice or that he would threaten, injure or intimidate a prospective witness or juror; that Howard Perry is not in any way a threat to the community or a threat to any individual or property situate in the Western District of Pennsylvania and is not a danger to anyone whatsoever.

3. That although the United States Attorney was requested on a number of occasions by the Court to present evidence bearing on the detention of Howard Perry, said United States Attorney for the Western District of Pennsylvania refused to submit any evidence to rebut Howard Perry's testimony and although requested to do so the United States Attorney did not submit any evidence to the Court on the issue as to whether the Defendant Howard Perry would flee the jurisdiction and not appear at Court proceedings as the same are scheduled.
4. That based upon the above finding of fact, and subject to certain conditions that this Court will hereinafter read into the record, said Defendant is hereby released temporarily on his own recognizance for a period not to exceed five days for the purpose of posting a $50,000.00 surety bond for each of the above two captioned charges.
5. If the bonds are not posted within 5 days, that is by December 10, 1985 at the closing of the United States Clerk of Court Office at 5:00 P.M. E.S.T. and/or if the Defendant Howard Perry violates any or all of the conditions of his release on said bonds, that this Court will read into the record, then

had in both hearings opined that the preventive detention features of the Bail Reform Act are unconstitutional, transcript before the district court in No. 85–253 at 31–32, 43; transcript before the district court in No. 85–263 at 47–59, the order does not mention such a ground of decision, *See United States v. Perry*, Nos. 85–253M and 85–263 (W.D.Pa. Dec. 5, 1985) (order granting release on bail). Instead it contains a finding "that Howard Perry is not in any way a threat to the community or a threat to any individual or property situate in the Western District of Pennsylvania and is not a danger to anyone whatsoever." *Id.* Relying on this finding and the fact that the United States submitted no evidence of likelihood of flight, the court ordered Perry "released temporarily on his own recognizance for a period not to exceed five days for the purpose of posting a $50,000 bond for each of the two captioned charges." *Id.*

The United States appealed in both cases and moved before a panel of this court to stay the order granting release on bail. That panel granted a stay and expedited the appeal as required by 18 U.S.C.A. § 3145(c) (West 1985). After argument, held on January 16, 1986, the United States moved in this court to dismiss its appeal in No. 85–263 (Court of Appeals Docket No. 85–3671). We have considered Perry's opposition to that motion. Because that opposition does not demonstrate any prejudice from the dismissal, the motion will be granted. Thus our review is solely with respect to the order denying pretrial detention in No. 85–253M (Court of Appeals Docket No. 85–3680).

## II.

### Issues Presented

Because the order appealed from contains a finding that Perry is not a danger to the community, and thus appears to satisfy the criteria for release under the

the said Howard Perry will be recommitted to a suitable jail or prison to await the proper disposition of the charges against him in accordance with law.

Bail Reform Act, the United States cannot prevail unless we may set that finding aside. The United States advances several reasons why we should do so. Perry, on the other hand, points out that even if we set aside the finding that he is not a danger to the community, the facial unconstitutionality of the preventive detention law is a separate ground for affirmance on which he relies and that we must address. We agree that unless we are prepared to affirm the release order on statutory grounds both the statutory and the constitutional issues must be considered.

## III.

### Scope of Review

Appellate review of a release or detention order is authorized by 18 U.S.C.A. § 3145(c) (West 1985). Neither this section nor any other provision of the Bail Reform Act specifies the scope of our review. In this circuit, however, it is now settled that the Court of Appeals must make an independent determination of a release or detention order. *See, e.g., United States v. Coleman*, 777 F.2d 888 (3d Cir.1985) (pretrial release, government appeal); *United States v. Strong*, 775 F.2d 504 (3d Cir.1985) (presentencing detention; defendant's appeal); *United States v. Delker*, 757 F.2d 1390 (3d Cir.1985) (pretrial detention, defendant's appeal). That independent determination must be made with respect to the statutory criteria for detention or release. Obviously review of the legal questions presented by the claimed facial unconstitutionality of the preventive detention provision in the Bail Reform Act is also plenary.

## IV.

### Statutory Issues

#### A. *The Detention Hearing Before the Magistrate*

In the hearing before the magistrate in No. 85–253M the United States produced

*United States v. Perry*, Nos. 85–253M and 85–263 (W.D.Pa. Dec. 5, 1985).

the complaint charging Perry with a violation of 21 U.S.C. § 841(a)(1) (1982) and 21 U.S.C. § 846 (1982). Appearing with counsel, Perry waived the reading of the complaint and pleaded not guilty. At that point the government moved for pretrial detention, asserting that Perry was a danger to the community. Perry's counsel asked that co-defendant Moore be produced, representing that he would exculpate Perry on the charge in the complaint. Informed by the magistrate that he could have Moore subpoenaed at Perry's expense, counsel declined to do so for reasons of expense.

The United States then produced Joseph Rotter, a special agent of the Drug Enforcement Administration who investigated the activities of Perry and Moore in the summer and fall of 1985. Rotter testified that he worked with Special Agent Daniel Williams in an undercover investigation, and that on August 29, 1985 Moore sold heroin to Williams. Perry's counsel objected to Rotter's testimony arguing, read generously, that his testimony was hearsay and that it offended the confrontation clause. Again counsel was advised of his opportunity to call, at his client's expense, any witness he desired. Rotter testified that on September 10 Williams paid Moore $2,300 in advance for a one-quarter ounce of heroin. Moore was followed from the site of the September 10 meeting to a dairy store, where he met Perry. After meeting Perry, Moore left the dairy store and using a coin operated telephone called a confidential informant to tell him that the $2,300 was paid and that the package would be delivered in an hour. At 8:55 P.M. Moore delivered to Williams a package the contents of which, when testified at a Drug Enforcement Administration laboratory, proved to be heroin. Rotter testified that similar transactions took place on October 15 and November 20, 1985, in which Williams paid Moore, Moore met Perry, and Moore shortly thereafter delivered heroin to Williams.

Rotter testified that after the November 20, 1985 transaction both Moore and Perry were arrested. A search, pursuant to a valid warrant, of Perry's residence produced $2,500 in currency that was identified by serial number to be part of the money used by Agent Williams to make the November 20 purchase. The balance, Rotter testified, was found on Moore's person when he was searched incident to his arrest.

Rotter also testified that he learned from Officer Benny Sledge that on July 18, 1985 the City of Pittsburgh Police Department conducted an investigation, arrested Perry, and searched his home, wherein cocaine, valium, and percodan were found. Perry's counsel objected on hearsay grounds, and asked the court to order the government to produce Office Sledge. He was informed that the court would not order the government to produce Officer Sledge, but that Perry was free to subpoena him. As he had with Moore and Williams, defendant declined to make the expenditure. Over a hearsay objection Rotter testified that the drugs seized by the Pittsburgh Police Department were sent to the Allegheny Crime Lab and tested positive for cocaine and percodan.

Finally, Rotter testified, again over a hearsay objection, that an assistant state attorney in Waukegan, Illinois, informed him that Perry had pled guilty in Illinois to possession of a firearm, was placed on probation or court-ordered supervision until September of 1986, and was in violation of the conditions of his probation.

Perry's counsel stipulated that a Pennsylvania state charge was pending with respect to the July 18, 1985 arrest. He cross-examined Rotter at some length. In the course of that examination Rotter conceded that he had no evidence suggesting that Perry would flee if released on bond. Counsel asked and Rotter responded:

Q. What facts do you have that Mr. Perry is dangerous to the community?

A. Based on his July 1984 arrest in Illinois, based on the July 18 search and investigation by the City of Pittsburgh police, and based on the November 20 arrest involving the activities of Howard Perry from August 29 up until that time,

it is my belief he shows a pattern of continuing criminal activity.

Transcript before magistrate in No. 85–253M at 43. Rotter had no evidence that Perry ever struck or threatened another person.

The court called the Pretrial Services Coordinator of the United States Probation Office, who testified concerning Perry's record, family status, and property. This witness confirmed that Perry had received two years probation for the Illinois gun possession charge, which did not involve any threats of violence.

The United States presented no other evidence. Perry's counsel indicated he would like to examine other witnesses, but represented that he had not made and would not make any effort to subpoena them. He claimed not to have the necessary witness fees, but he filed no affidavit of indigency.

The magistrate found probable cause to believe Perry committed the offenses charged, that he was presently on bail from the state court on narcotics charges, and that he failed to rebut the presumption in the Bail Reform Act of his danger to the community. Thus bail was denied.

The Bail Reform Act authorizes a judicial officer to order detention upon a finding "that no condition or combination of conditions will reasonably assure ... the safety of ... the community...." 18 U.S.C.A. § 3142(e) (West 1985).

> Subject to rebuttal ... it shall be presumed that no condition or combination of conditions will reasonably assure ... the safety of the community if the judicial officer finds that there is probable

cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)....

*Id.* At a detention hearing the defendant "shall be afforded the opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C.A. § 3142(f) (West 1985). While the judicial officer must, in order to detain, find by "clear and convincing evidence" that "no conditions or combination of conditions will reasonably assure the safety of ... the community," that finding need not rest upon evidence that would be admissible in a criminal trial. *Id.* The Act lists the information that the judicial officer may take into account in determining whether any conditions of release will reasonably assure the safety of the community.[3]

 Clearly the hearing before the magistrate satisfied the requirements of the Bail Reform Act. Perry had counsel, and counsel had a full opportunity to cross-examine the witnesses who testified. Perry was also afforded the opportunity, although he did not avail himself of it, to call witness in his own behalf. Perry's counsel objected that some of the evidence presented by the government was hearsay. The statute, however, explicitly permits use of evidence that would not be admissible in a criminal trial. 18 U.S.C. § 3142(f) (West 1985). *See also United States v. Delker*, 757 F.2d 1390, 1397 (3d Cir.1985) (holding that hearsay was admissible in a pretrial detention hearing). The testimony of Spe-

---

**3.** These include:
 (1) the nature and circumstances of the offense charged, including whether the offense involves a narcotic drug;
 (2) the weight of the evidence against the person;
 (3) the history and characteristics of the person, including—
 (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal his-

tory, and record concerning appearance at court proceedings; and
 (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
 (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.
18 U.S.C.A. § 3142(g) (West 1985).

cial Agent Rotter established probable cause to believe that Perry had engaged in concerted activity for the distribution of heroin. Thus the magistrate was correct in finding that the statutory presumption of danger to the community was triggered. The United States presented evidence respecting Perry's history and characteristics, including his family ties, past conduct, criminal history, and parole status at the time of the current offense. Perry presented no evidence. Thus the magistrate did not err in concluding that Perry did not overcome the presumption.[4]

### B. *The District Court Review*

Perry moved, pursuant to section 3145(b) of the Bail Reform Act, for review by the district court of the magistrate's detention order. We have held that this section authorizes the district court to hold a *de novo* hearing. *See Delker,* 757 F.2d at 1394. The district court elected to hold such a hearing. The United States produced the Complaint in No. 85–253M, the magistrate's detention order, and the transcript of proceedings before the magistrate, each of which was marked as an exhibit. The court noted that the complaint charged an offense that triggered the section 3142(e) presumption and asked counsel for Perry to proceed on the assumption that the burden of overcoming the presumption was on the defendant.

At that point Perry's counsel moved for Perry's release, arguing that the Act was unconstitutional under the first, fourth, fifth, sixth, and eighth amendments, "and all the other so-called rights, privileges and protections the individual has been given." Transcript before district court in No. 85–253M at 8–9, 13. Counsel also relied on the presumption of innocence and substantive personal liberty. *Id.* at 9. He also object-

ed to the government's failure in the hearing before the magistrate to produce as witnesses persons to whom hearsay statements had been attributed. Thus he made a procedural as well as a substantive due process challenge. Finally, he asked that "before attempting to prove that Mr. Perry will not flee or is not a danger to the community, I would ask your honor to dismiss the detention petition as unconstitutional. . . ." *Id.* at 13.

Responding to the motion to release on the ground that the Act is unconstitutional, the Assistant United States Attorney outlined the evidence that had been presented to the magistrate. He had difficulty presenting further argument because the district judge made a lengthy statement as to his reactions to the Bail Reform Act. The court concluded with the statement that the Bail Reform Act "is dangerous and also unconstitutional." *Id.* at 31. The court ruled, "I will set a bond for this man. The Act is unconstitutional on its face." *Id.* at 32.

Following this ruling there was a recess. Several hours later the court reconvened and advised counsel, "I think we ought to address one issue we omitted to address, and that is in case of 85–253M. That is as to whether or not this man would flee the community. We never addressed that, right?" *Id.* at 42. Thus it appears that the court's holding as to unconstitutionality referred only to the preventive detention, not the danger of flight aspect of the statute.

Perry took the stand and testified about his ties to the community, the fact that he was out on bail from state court charges and had not fled, his education, and his intention to remain in Allegheny County to face all charges. The transcript of the resumed hearing discloses that the only issue addressed was whether or not Perry was likely to flee. No testimony was

---

4. Because Perry presented no evidence our resolution of the statutory question does not require that we decide whether the section 3142(e) presumption shifts to the defendant the burden of persuasion, or merely the burden of production. We consider that issue in connection with Perry's constitutional challenges to the preventive detention statute. It is sufficient to note here

that the United States urges that the statute shifts the burden of persuasion, but concedes that it has yet to persuade any appellate court to adopt that interpretation of section 3142(e). *See United States v. Fortna,* 769 F.2d 243, 251 (5th Cir.1985); *United States v. Jessup,* 757 F.2d 378, 380–84 (1st Cir.1985).

presented and no argument was made about Perry's danger to the community. The United States represented that it had no witnesses to present on the issue of risk of flight. At this point the court ruled, "All right, I am going to reiterate my former order and allow this man to be freed, provided he posts a $100,000 bond with a sufficient surety." *Id.* at 73. With that the proceedings in No. 85–253M concluded.[5] Thus the record before us consists of the record made in No. 85–253M before the magistrate, Perry's testimony on risk of flight, the argument of counsel as to unconstitutionality of the preventive detention provision, the district court's ruling regarding the constitutionality of the Bail Reform Act, and the district court's written order granting bail.

## C. *Our Review*

Exercising plenary review, we conclude (1) that the United States established reasonable cause for belief that Perry committed the offense charged in No. 85–253M, an offense for which imprisonment for ten years or more is prescribed in the Controlled Substances Act, (2) that under section 3142(e) of the Bail Reform Act such a finding raised a presumption that Perry was a danger to the community, and (3) that there is no evidence in the record overcoming that presumption. Indeed Perry presented none. Thus we cannot affirm the release order on statutory grounds, and, therefore, we address Perry's multitude of constitutional contentions.

## V.

### Constitutional Issues

Although we cannot represent that the efforts of Mr. Perry's counsel have been particularly illuminating on the constitutional issues, no substantive or procedural constitutional issue that might arguably assist his client was waived.[6] Thus we consider the constitutional issues as we understand them, addressing first the substantive validity of preventive detention, and then the alleged procedural deficiencies in the manner in which a preventive detention determination is made.

## A. *Substantive Validity of Preventive Detention*

### (1) *Issues Not Addressed*

Initially it should be noted that there are two presumptions in the Bail Reform Act. The first presumption, "that no condition or combination of conditions will reasonably assure the safety of any other person and the community" is contained in the first paragraph of section 3142(e). *See* 18 U.S.C.A. § 3142(e) (West 1985). This first presumption arises in cases where (1) the accused has previously been convicted of one of a number of specified offenses, (2) the previous offense was committed while on release pending trial, and (3) "not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment," for the previous offense. *Id.* The second presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," is contained in the second paragraph of section 3142(e) and arises if there is probable cause to believe that the accused has committed a major drug trafficking offense or a felony with a firearm. *Id.*

---

**5.** Perry contends that we should also take into account the record made in the detention hearing in No. 85–263, in which the government has moved to dismiss its appeal. Although we have concluded that the government's motion shall be granted, we have examined the transcript of the detention hearing in No. 85–263 and find nothing in it bearing on whether or not the section 3142(e) presumption arising from probable cause that Perry committed the offense charged in No. 85–253M is rebutted. Indeed, early in the hearing in No. 85–263 the court reiterated the ruling that the preventive detention feature of the Act, as distinguished from the risk of flight feature, was unconstitutional. Transcript before district court in No. 85–263 at 104.

**6.** The lack of helpful assistance from counsel can perhaps be attributed to our compliance with the direction in 18 U.S.C.A. § 3145(c) (West 1985) that appeals in detention cases be determined promptly.

The first presumption is not applicable in this case because the government presented no evidence that Perry had previously been convicted of an offense while he was on pretrial release. Moreover, we are not concerned with the provision in the first presumption dealing with detention to assure "the safety of any other person." *Id.* That language addresses the problem of threats to potential witnesses and would require an analysis in terms of its necessity or propriety for safeguarding the integrity of the federal administration of justice. Nor are we concerned with the first provision of the second presumption—the risk of flight. Because the government does not rely on the likelihood that Perry will not appear for trial, it does not defend the constitutionality of a detention order as necessary to assure Perry's presence at trial. Instead, we are faced solely with the constitutionality of the second provision of the second presumption—the safety of the community.

### (2) *Congressional Authority*

■ Because we are dealing with neither the authority of the federal government to take steps to assure that a defendant will attend a criminal trial and respond to a judgment of sentence, nor with the federal government's authority to prevent interference with judicial proceedings Congress has authorized, we must look elsewhere for the source of federal power to detain arrestees, without conviction, for the "safety of the community." The preventive detention provision happens to be housed in a provision of the title of the United States Code dealing with crimes. Its location there, however, does not relieve us of the obligation to consider the source of congressional authority for its enactment. Despite its location, the preventive detention provision results in what is essentially a civil, not a criminal, commitment. Indeed the United States, in defending procedural challenges to the statute, has consistently resisted efforts to have it classified as an involuntary criminal commitment in the nature of punishment for crime. Moreover,

while commitment under the statute is triggered by a criminal charge and lasts only until conviction or acquittal, the length of civil commitment does not in itself inform as to the powers of Congress. If short-term civil commitment is "necessary and proper for carrying into Execution"[7] the powers of Congress, it is not immediately apparent why long term civil commitment, divorced entirely from Title 18 of the United States Code, would not be equally so. Thus civil commitment for "the safety of the community" must be analyzed independently of the criminal charge.

■ What, then, is the source of congressional authority to provide for civil commitment for "the safety of the community"? As the legislative voice of a government of limited powers, Congress, unlike the legislatures of the states, cannot sanction for the general welfare. Since *Steward Machine Co. v. Davis*, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937) and *Helvering v. Davis*, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937), however, it has been settled that Congress can use its spending powers to coerce conduct consistent with its views of the general welfare in ways that it perhaps could not otherwise command. But the general welfare clause has not been divorced from the spending powers of Article I, section 8, clause 1 of the Constitution. Congress may concern itself with "the safety of the community" only to the extent that other grants of specific power so permit. The District of Columbia's pretrial detention statute, upon which the pretrial detention feature of the Bail Reform Act was modeled, and which was upheld against a constitutional challenge in *United States v. Edwards*, 430 A.2d 1321, 1325–31 (D.C.Ct.App.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982), did not present the same federalism issue with respect to the power to detain for the general welfare, since federal sovereignty over the District of Columbia is unlimited. *See* U.S. Const. art. I, § 8, cl. 16. Thus the *Edwards* case

---

7. U.S. Const. art. I, § 8, cl. 18.

does not enlighten us with respect to the power to enact the Bail Reform Act itself.

One case in which the Supreme Court has addressed the issue of civil commitment without bail outside the District of Columbia is *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). Unfortunately, that case provides little guidance as to the source of Congress's power to legislate civil detention for the general welfare because it deals with detention of aliens awaiting deportation—an area of substantive concern clearly within the exclusive province of the federal government. Another case is *Greenwood v. United States*, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956), which upheld the preventive detention provisions in 18 U.S.C. §§ 4242–4248 (currently codified as amended at 18 U.S.C.A. §§ 4241–4247 (West 1985)). That statute authorizes the civil detention of persons charged with federal offenses who are unable, because of their mental condition, to stand trial. Justice Frankfurter's opinion for the Court rejected a federalism challenge but at the same time defined the extent of federal power to deal with pretrial commitment. Accordingly, he wrote,

We reach then the narrow constitutional issue raised by the order of commitment in the circumstances of this case. The petitioner came legally into the custody of the United States. The power that put him into such custody—the power to prosecute for federal offenses—is not exhausted. Its assertion in the form of the pending indictment persists. The District Court has found that the accused is mentally incompetent to stand trial at the present time and that, if released, he would probably endanger the officers, property, or other interests of the United States—and these findings are adequately supported. In these circumstances the District Court has entered an order retaining and restraining petitioner, while in his present condition, with habeas corpus always available when circumstances warrant. This commitment, and therefore the legislation authorizing commitment in the context of this case, involve an assertion of authority, duly guarded, auxiliary to incontestable national power. As such it is plainly within congressional power under the Necessary and Proper Clause. Art. I, § 8, cl. 18.

*Greenwood*, 350 U.S. at 375, 76 S.Ct. at 415. The authority conferred by the mental illness civil commitment statute is "duly guarded," both procedurally and substantively, and in recognition of the limits of congressional authority it provides for release of the detainee when the federal reason for detention ceases. *See* 18 U.S.C.A. § 4246(g) (West 1985). That release is required even if the detainee is a person whose release would create a substantial risk of bodily injury or property damage. The only qualification to the release requirement is that the state of domicile or of trial be afforded the opportunity to commence state civil commitment proceedings within a limited time. *Id.*

■ What *Greenwood* teaches, therefore, is that the federal government may resort to civil commitment when such commitment is necessary and proper to the exercise of some specific federal authority. Congress may not, however, authorize commitment simply to protect the general welfare of the community at large. The specific federal interests recognized in *Carlson* (detention for deportation) and *Greenwood* (detention for trial or sentence) are not presented in this instance. Perry is native-born and cannot be deported. In addition the government does not contend that he will be unavailable for trial. Rather, the government seeks Perry's civil commitment solely to protect the safety of the community.

■ We are concerned only with the second presumption/detention provision in section 3142(e). Although the language of that presumption—"safety of the community"—is unqualified, the presumption is triggered only by a finding by a judicial officer of probable cause to believe the defendant committed certain serious violations of the Controlled Substances Act, the Controlled Substances Import and Export Act, section 955a of title 21 of the United States Code,

or section 924(a) of title 18 of the United States Code. *See* 18 U.S.C.A. § 3142(e) (West 1985). A reasonable construction of this provision is that it is aimed at preventing the specific harm to the community proscribed by the four designated statutes; three dealing with drugs and one dealing with the use of firearms in the commission of federal offenses. We, therefore, read the second presumption of section 3142(e) as addressing only danger to the community from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses. Thus because Congress has the power to proscribe the activities in question, it has the auxiliary authority, under the necessary and proper clause, to resort to civil commitment to prevent their occurrence. This authority, however, is limited by the specific substantive or procedural requirements of the Bill of Rights. Because Perry claims the protection of those rights, we now consider the specific constitutional constraints on the Bail Reform Act.

### (3) *Other Constitutional Limitations*

#### a) *The Eighth Amendment*

Perry contends that the provision in the eighth amendment that "[e]xcessive bail shall not be required" establishes a constitutional right to bail and therefore a substantive prohibition against civil preventive detention. The Supreme Court has never resolved this question. In *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951), the Court stressed the importance of the availability of release on bail as a protection of individual liberty, but the case dealt with a federal statute explicitly recognizing the right to bail. The same term the Court in *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), observed,

> The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country. Thus in criminal cases bail is not compulsory where the punishment may be death. Indeed, the very language of the Amendment fails to say all arrests must be bailable.

342 U.S. at 545–46, 72 S.Ct. at 536–37 (footnote omitted). Since deportation proceedings were involved in *Carlson v. Landon* the Court's suggestion that the right to bail is only statutory is dicta. Legal scholars, some of them eminent, have expressed conflicting viewpoints about the accuracy of that dicta. *Compare* Foote, *The Coming Constitutional Crisis in Bail,* 113 U.Pa.L.Rev. 959 (1965) (eighth amendment recognizes a right to bail); Tribe, *An Ounce of Detention: Preventive Justice in the World of John Mitchell,* 56 Va.L. Rev. 371 (1970) (there is a right to bail); Note, *The Eighth Amendment and the Right to Bail: Historical Perspectives,* 82 Colum.L.Rev. 328 (1982) (eighth amendment recognizes a right to bail), *with* Duker, *Right to Bail: A Historical Inquiry,* 42 Alb.L.Rev. 33 (1977) (eighth amendment does not grant a right to bail); Meyer, *Constitutionality of Pretrial Detention* (pts. 1 & 2), 60 Geo.L.J. 1139, 1381 (1973) (no constitutional right to bail); Mitchell, *Bail Reform and the Constitutionality of Pretrial Detention,* 55 Va.L.Rev. 1223 (1969) (no constitutional right to bail). With one exception, those federal courts that have addressed the issue have held that there is no absolute right to bail. *See, e.g., United States v. Giangrosso,* 763 F.2d 849, 851 (7th Cir.1985) (holding that eighth amendment is not implicated by Bail Reform Act's provision dealing with detention pending appeal); *United States v. Freitas,* 602 F.Supp. 1283, 1288 (N.D.Cal.1985) (upholding Bail Reform Act of 1984 against eighth amendment challenge); *United States v. Divarco,* 602 F.Supp. 1029, 1034 (N.D.Ill.1985) (rejecting arguments that the Bail Reform Act of 1984 is unconstitutional under the eighth amendment); *United*

*States v. Kouyoumdjian*, 601 F.Supp. 1506, 1511 (C.D.Ca.1985) (upholding Bail Reform Act of 1984); *United States v. Acevedo-Ramos*, 600 F.Supp. 501, 507 (D. Puerto Rico 1984) (upholding Bail Reform Act of 1984), *aff'd*, 755 F.2d 203 (1st Cir. 1985). The exception is the United States Court of Appeals for the Eighth Circuit, which found a limited right to bail. *See Hunt v. Roth*, 648 F.2d 1148, 1164–65 (8th Cir.1981) (eighth amendment implies affirmative right to bail in certain circumstances), *vacated as moot sub nom. Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam). The Third Circuit Court of Appeals has not explicitly addressed the issue.

Perry's reliance on the eighth amendment would have been more significant in the days when the Supreme Court was engaged in the sterile *Palko-Adamson* debate over whether due process was limited to the specific process guarantees of the first eight amendments. For the incorporationists Perry could only prevail if a positive law provision such as the eighth amendment conferred on him a substantive personal liberty interest. It has long since been settled, however, that the due process clauses of the fifth and fourteenth amendments refer to substantive personal liberty independent of positive law. *See, e.g., Youngberg v. Romeo*, 457 U.S. 307, 324–25, 102 S.Ct. 2452, 2462–63, 73 L.Ed.2d 28 (1982) (holding that an institutionalized mental patient has protected liberty interests in safety, freedom of movement, and training under the due process clause of the fourteenth amendment); *Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980) (involuntary transfer of a state prisoner to a mental hospital implicates a liberty interest that is protected by the due process clause of the fourteenth amendment); *Addington v. Texas*, 441 U.S. 418, 431–33, 99 S.Ct. 1804, 1812–13, 60 L.Ed.2d 323 (1979) (requiring clear and convincing proof in an involuntary civil commitment proceeding); *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) (holding that a student has a fourteenth amendment

liberty interest in being free from unreasonable bodily restraint and punishment); *Roe v. Wade*, 410 U.S. 113, 164–65, 93 S.Ct. 705, 732, 35 L.Ed.2d 147 (1973) (recognizing that the constitutional right of privacy includes a woman's right to terminate a pregnancy absent an overriding state interest); *Griswold v. Connecticut*, 381 U.S. 479, 485–86, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) (holding that a state statute forbidding the use of contraceptives violates the constitutional right of marital privacy). Freedom from constraint is clearly an element of that substantive liberty interest. Thus for Perry's purposes the eighth amendment would be significant only if it were construed to afford a broader substantive protection of personal liberty than does the due process clause; that is, if it prohibited civil preventive detention altogether.

Although no holding in the Supreme Court is controlling, *Greenwood* and *Carlson* are certainly instructive. *Carlson* states explicitly that the eighth amendment right to bail is not universally applicable. 342 U.S. at 545–46, 72 S.Ct. at 536–37. It seems more reasonable, in any event, to consider the bail clause to be applicable solely to the problem it most clearly addresses: conditions of release or detention designed to assure a criminal defendant's appearance at trial and availability for sentence. It does not comfortably fit the entirely separate problem of civil preventive detention that this case presents. Thus we reject Perry's contention that section 3142(e) violates the eighth amendment.

### (b) *Substantive Due Process*

While the eighth amendment does not grant an absolute right to bail, there is a substantive liberty interest in freedom from confinement. It is also clear that because of that interest, entirely apart from the federalistic concerns, there are substantive limitations upon the power of government, state or federal, to impose civil detention. *See O'Connor v. Donaldson*, 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975) (mental illness does

not alone justify confinement); *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972) (pendency of a charge that cannot be tried because of mental illness does not, by itself, justify confinement). In *Jackson* the Court distinguished *Greenwood* on the ground that 18 U.S.C. § 4741 required a finding of dangerousness in addition to pendency of a federal charge or a sentence. Thus a demonstration of dangerousness justifies deprivation of liberty by civil commitment without offending the substantive due process limitation upon government.[8]

■ Applying the reasoning in *Jackson* to the analogous deprivation of liberty involved in pretrial detention, we hold that the second detention provision in section 3142(e) does not violate substantive due process. Section 3142(e) permits preventive detention when "no condition or combination of conditions will reasonably assure ... the safety of the community" from the more serious offenses proscribed by the Controlled Substances Act, the Controlled Substances Import and Export Act, section 955a of title 21 of the United States Code, and the use of deadly or dangerous weapons in crimes of violence. Thus it permits detention of persons found to be dangerous in a very real sense; distributors of dangerous drugs and users of firearms in the commission of crimes of violence.

### (c) *Procedural Due Process*

■ The constitutional inquiry does not end, however, with the conclusion that the legislative decision to confine persons found to be dangerous to the safety of the community passes substantive due process muster. A civil detention order results in the deprivation of the most fundamental of all personal liberties. Such a deprivation may occur only in accordance with procedural safeguards. These procedural safeguards in turn must be evaluated in light of the significance of the interest affected, the risk of erroneous determination

through the procedures used, and the probable value of additional safeguards. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Section 3142(e) requires two separate findings. First, a judicial officer must find that there is probable cause to believe that the defendant has committed one of the designated offenses. 18 U.S.C.A. § 3142(e) (West 1985). That probable cause finding then triggers the dangerousness to the community presumption and a separate finding regarding that provision, under a different standard, must be made. Accordingly, separate due process analysis is required for each finding.

■ The probable cause finding serves three purposes. First, it is determinative of the issue whether the defendant may be held at all or required to post bail. Second it permits further inquiry into the question of dangerousness, and, finally, it gives rise to the presumption that the defendant is dangerous. In evaluating the process due the first requirement we are guided by *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). *Gerstein* involved an arrest and detention under a prosecutor's information. Analyzing the question under the fourth amendment the Court held that the arrestee was entitled to a determination of probable cause by a judicial officer prior to any extended detention. *Id.* at 114, 95 S.Ct. at 863. The Court went on to state, however, that the arrestee was not entitled to "the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses." *Id.* at 119–20, 95 S.Ct. at 866. Hence, because the Bail Reform Act provides for a determination of probable cause by a judicial officer prior to extended detention, 18 U.S.C.A. § 3142(e) (West 1985), the Act satisfies procedural due process. Indeed, the Act provides for an adversarial proceeding and representation by counsel, 18 U.S.C.A. § 3142(f) (West 1985), neither of which was required

---

**8.** This case does not present the question whether the need for care, treatment, or training may be a separate substantive justification for a dep-

rivation of liberty. *See Jackson,* 406 U.S. at 737, 92 S.Ct. at 1857.

in *Gerstein,* 420 U.S. at 121–23, 95 S.Ct. at 866–67. Furthermore, the second and third functions of the probable cause determination—permitting further inquiry into dangerousness and giving rise to the presumption of dangerousness—are not so significant, standing alone, that a stricter procedural standard than that of *Gerstein* ought to be required. This is so because different procedural safeguards apply in the dangerousness inquiry.

Turning to that inquiry, it is appropriate to note what the factfinder is required to determine. In a criminal trial the factfinder is required to reconstruct past events. Those events, which occurred in the exterior world, left their own imprint on history and knowledge of them is attainable by methods within the common experience of mankind. Nevertheless our legal tradition surrounds the process of reconstructing past events in a criminal trial with significant procedural safeguards. The defendant is presumed to be innocent. *See Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 1870, 60 L.Ed.2d 447 (1979). The state must prove its case beyond a reasonable doubt. *See Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985). The defendant must be afforded the opportunity to confront and cross-examine witnesses. *See* U.S. Const. amend. VI. The rules of evidence govern. *See* Fed.R.Evid. 101. In contrast the dangerousness determination involves a prediction of the detainee's likely future behavior. Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions. By its very nature such a prediction is a far more speculative and difficult undertaking than the reconstruction of past events. Moreover, in the only other context in which the American judicial system, state or federal, is asked to make a prediction of future dangerousness—the confinement of the mentally ill who are a danger to themselves or others—the prediction is made with the assistance of medical professionals who have received scientific training in making such a prediction based upon clinical observation. *See Minnesota ex rel. Pearson v.*

*Probate Court,* 309 U.S. 270, 275–76, 60 S.Ct. 523, 526, 84 L.Ed. 744 (1940). Under section 3142(e) of the Bail Reform Act, however, the factfinder deals with persons who are presumably mentally normal and receives no scientific professional assistance from anyone in predicting how they are likely to behave in the future.

Given the grave invasion of the most fundamental of all personal liberties that occurs when preventive detention is ordered and the high risk of an erroneous judgment as to the highly speculative determination of future dangerousness, the procedural due process mode of analysis suggested by *Mathews* seems to require that the procedural safeguards should approach those used in the far less speculative enterprise of determining guilt of past misconduct. Despite the inherently speculative and difficult nature of the task of predicting likely future conduct by normal persons, however, the procedural rules under which the prediction is made present a severe contrast with those for determining past misconduct. The judicial officer need only be convinced of dangerousness by clear and convincing evidence. 18 U.S.C.A. § 3142(f) (West 1985). The rules concerning admissibility of evidence in criminal trials do not apply. *Id.* The detainee is not presumed to intend lawful conduct. Rather it is presumed that he will act dangerously. 18 U.S.C.A. § 3142(e) (West 1985). It is the government's position that this presumption shifts the burden of persuasion to the defendant on the issue of dangerousness. This position, however, has been consistently rejected by the courts that have considered it, and section 3142(e)'s presumption has been interpreted as only shifting the burden of production. *See United States v. Fortna,* 769 F.2d 243, 251 (5th Cir.1985); *United States v. Jessup,* 757 F.2d 378, 381–84 (1st Cir.1985) (addressing only the presumption dealing with flight); *Freitas,* 602 F.Supp. at 1293; *United States v. Payden,* 598 F.Supp. 1388, 1397 (S.D.N.Y.1984), *rev'd on other grounds,* 759 F.2d 202 (2d Cir.1985). For purposes of our procedural due process

analysis we hold that the presumption only shifts to the defendant the burden of producing evidence of lack of dangerousness and that the burden of persuasion ultimately rests upon the United States. We do so because the interpretation of the statute urged by the government increases the due process problem we must resolve. Such constitutional difficulties should be avoided. Moreover interpreting the presumption as imposing on the defendant a burden of going forward rather than a risk of nonpersuasion is consistent with the provision that the judicial officer be convinced as to dangerousness by clear and convincing evidence.

Even so construed, however, there are serious difficulties for the detainee. The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness. Placing on him the burden of going forward to prove that he will not in the future do that with which he is presently charged involves problems of self-incrimination if he testifies and is subject to cross-examination.[9] Aside from his own testimony about his future intention to refrain from dealing in drugs or using guns in crimes of violence, there may be several types of evidence available, *e.g.*, testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation. In many cases, however, such evidence may be insufficient to overcome the § 3142(e) presumption and, even if it does, such evidence may be insufficient to undermine the government's evidence of dangerousness, so that the defendant may find it necessary to testify. Thus the detainee is placed in the position of risking self-incrimination or suffering the grave civil disability of preventive detention. *See Spevack v. Klein*, 385 U.S. 511, 515–16, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967) (plurality opinion) (holding that a lawyer had the right to assert the privilege against self-incrimination in a disciplinary proceeding and a state

could not disbar a lawyer for refusing to produce incriminating documents); *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967) (holding that the state could not use statements obtained from police officers during an investigation, when the state had offered the officers the choice of either being fired if the officer refused to answer or forgoing the privilege against self-incrimination by giving the statements).

■ Because the presumption of dangerousness, if unrebutted by evidence offered by the defendant, places the defendant in the position of risking self-incrimination by testifying as to his future intentions, or running the grave civil disability of preventive detention, it poses a serious issue of unconstitutionality under the fifth amendment privilege against self-incrimination. *See Spevack*, 385 U.S. at 516, 87 S.Ct. at 628; *Garrity*, 385 U.S. at 500, 87 S.Ct. at 620. That issue would not be present if use-fruits immunity is available with respect to the defendant's testimony offered for the purpose of rebutting the presumption. *See Murphy v. Waterfront Commission*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964). The Bail Reform Act makes no provision for the granting by the Justice Department of statutory use-fruits immunity. The absence of statutory authority to grant use-fruits immunity is not dispositive, however, because the Supreme Court has long recognized that the courts may prevent the use at trial of testimony by a defendant that was necessary for the vindication of a constitutional right. *See Simmons v. United States*, 390 U.S. 377, 393–94, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) (defendant's testimony in support of a fourth amendment suppression claim may not be used at trial). *Cf. Government of the Virgin Islands v. Smith*, 615 F.2d 964, 969–70 (3d Cir.1980) (defense witness testimony necessary to vindicate constitutional rights); *United States v. Herman*, 589 F.2d 1191, 1196,

---

**9.** In this case when Perry testified about the likelihood of flight the court warned him to limit his testimony to that subject because his testimony could be used against him at a trial on the underlying charge. Transcript before district court in No. 85–253M at 42.

1203–04 (3d Cir.1978) (same), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). Under the Bail Reform Act the defendant's testimony may be necessary to vindicate the most fundamental of all constitutional rights, the right of liberty from civil incarceration. The availability of a judicial grant of use-fruits immunity with respect to a defendant's testimony in rebutting the presumption is both appropriate, and in this case necessary to avoid holding that section 3142(e) violates the fifth amendment. Neither *United States v. Doe,* 465 U.S. 605, 616–17, 104 S.Ct. 1237, 1244–45, 79 L.Ed.2d 552 (1984), nor *Pillsbury Co. v. Conboy,* 459 U.S. 248, 254 n. 11, 103 S.Ct. 608, 612 n. 11, 74 L.Ed.2d 430 (1983), preclude the availability of such immunity. These cases caution that the courts have a limited role to play with respect to grants of immunity when the government or a private party seeks incriminating testimony. They do not address the dilemma posed in *Simmons v. United States,* of suffering a grave invasion of a constitutional right or risking self-incrimination by attempting to vindicate that right. Moreover, the decision to put the defendant in a self-incrimination dilemma in the preventive detention setting rests with the Justice Department, not with the defendant or a third party. Hence, because *Simmons v. United States* authorizes the grant of use immunity, we hold that the section 3142(e) presumption of danger to the community, as we have construed it, does not violate the fifth amendment due process or self-incrimination clauses.

### (d) *Equal Protection*

Perry's fifth amendment equal protection challenge to the preventive detention feature of the Act, as best we can glean, is twofold. First, he relies on statements by the trial judge that preventive detention is more likely to be applied against minorities. Transcript before district court in No. 85–253M at 31–34. To the extent that Perry's argument is predicated upon any discriminatory application of the statute it is totally lacking in evidentiary support on this

record. *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). If the argument is predicated upon the contention that the Bail Reform Act has a discriminatory purpose or intent, we also reject it. The Bail Reform Act is racially neutral on its face. *See, e.g., Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 238–44, 96 S.Ct. 2040, 2046–49, 48 L.Ed.2d 597 (1976).

■ The statutory classification is facially neutral not only with respect to race, but also with respect to national origin, gender, or alienage. The classification complained of, preventive detention aimed at protecting the public from certain serious drug and gun offenses, is facially underinclusive in that it does not reach criminal enterprises as risky to the public as espionage and bribery. Clearly, however, such an underinclusive classification is not suspect, and should thus be judged only for its rationality. *See McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). It was undoubtedly rational for Congress to select for special concern some but not all of the antisocial activities it could prohibit, and single those out for the preventive detention safeguard.

Because we are not dealing with a suspect classification, Perry's equal protection contention depends upon the fact that the challenged statute affects a fundamental interest. Freedom of locomotion is such an interest. The Supreme Court has applied equal protection analysis to classifications that affect fundamental interests. *See, e.g., Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (voting and duration of residence); *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (voting and property ownership); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (interstate travel and duration of residence for welfare benefits);

*Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1966) (voting and requirements for placement on ballot); *Harper v. Virginia Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (voting and poll tax); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (access to counsel on appeal); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (access to courts). In all of these fundamental rights cases, however, the substantive legislative classification was not in question. The successful litigants were entitled to vote, to sue, to take an appeal, or to travel so long as they had the wherewithall or had resided in the locality long enough. What was involved was the effect of a cost or residence barrier upon the exercise of rights otherwise available. While Perry's right to be free from civil commitment is fundamental, what he complains of is not some classification such as wealth or residence that stands as a barrier to its otherwise free exercise. His complaint is with the congressional decision to deprive him of the opportunity to exercise the right at all. That complaint is of a different variety than those the Court has dealt with in the fundamental rights strand of its equal protection caselaw. It seems more appropriately dealt with as a matter of substantive due process. *See Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *but see Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). As already discussed, however, Perry's substantive due process claim is foreclosed by Supreme Court precedent. We may not accomplish the avoidance of substantive due process precedent by applying an equal protection label to what is analytically the same problem.

### (e) *The Sixth Amendment*

Perry also relies on the sixth amendment. In his argument counsel specifically mentioned the deprivation of a jury trial. Also arguably relevant, and apparently relied upon, are the confrontation clause and the speedy trial clause.

#### (1) *Jury Trial*

The jury trial provisions in the sixth amendment, and in Article III, section 2, clause 3, refer to criminal prosecutions. Although the preventive detention determination is made incidental to a criminal prosecution, commitment on the basis of dangerousness to the community is civil, not criminal. Congress might have relied upon some other triggering event for the commencement of such a proceeding, but its determination to use the criminal charge as the triggering event does not change the nature of the proceeding. Nor can Perry rely upon the seventh amendment guarantee of jury trial in civil cases, for a proceeding leading to civil preventive detention, whatever else it is, plainly is not a suit at common law.

#### (2) *Confrontation*

Section 3142(f) provides for the cross-examination of those witnesses who are produced. We have held that this statutory requirement ordinarily requires that witnesses that the government produces be available for cross-examination in open court, rather than heard *in camera. United States v. Accetturo,* 783 F.2d 382 (3d Cir.1986). As so construed the Act on its face appears to satisfy the confrontation clause with respect to those witnesses who appear. The provision in section 3142(f) permitting the use of hearsay evidence presents a different confrontation clause issue, and Perry points out that hearsay was used. In the hearing before the magistrate, however, Perry was offered the opportunity to subpoena the two persons, Special Agent Williams and Police Officer Sledge, to whom any hearsay was attributed bearing upon the reasonable cause determination. The reasonable cause determination gave rise to the presumption, and Perry never attempted to overcome it. Because he did not, we decline to resolve the question whether the sixth amendment confrontation clause ever applies to the determination of dangerousness.

### (3) Speedy Trial

In *United States v. Accetturo*, 783 F.2d 382 (3d Cir.1986), this court considered and rejected the contention that the preventive detention provisions of the Bail Reform Act are unconstitutional because they do not direct judicial officers, in determining when detention is appropriate, to consider the probable length of pretrial detention that detainees will face. We read the *Accetturo* opinion as addressing a due process challenge and as requiring an individual determination with respect to a detainee's objection to continued confinement if under the rather porous provisions of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1982), trial is long delayed. The due process right recognized in *Accetturo* is not presented in this appeal, for we have no information as to when Perry will be tried.

▇▇▇ *Accetturo* does not, however, control Perry's sixth amendment speedy trial claim. Nevertheless, we reject it. The speedy trial clause deals with the timeliness of criminal prosecutions, not civil commitment proceedings. Moreover Perry has had a very speedy determination of his status as a person dangerous to the community—all too speedy as far as he is concerned.

### Conclusion

Perry relied on constitutional provisions in addition to those we have explicitly discussed. He has not pointed out how they would afford him any protections in addition to those we have dealt with. Thus there is no occasion to address them. We hold that the second preventive detention provision in section 3142(e) of the Bail Reform Act does not violate the eighth amendment, substantive due process, procedural due process, equal protection, or the sixth amendment. We also hold that Perry failed to overcome the presumption of dangerousness and thus that he should have been detained. The order admitting him to bail in No. 85–253M will, therefore, be reversed and the case remanded for the entry of a detention order. This reversal is without prejudice to a motion by Perry to reopen the detention hearing if he, knowing the Act is not facially invalid, desires to attempt to overcome the presumption of dangerousness.