UNITED STATES of America,
Appellant,

v.

CARBONE, Adolph "Butch".

No. 85–5836.

United States Court of Appeals,
Third Circuit.

Argued June 3, 1986.

Decided June 23, 1986.

Garth, Circuit Judge, filed dissenting opinion.

Salvatore T. Alfano, (Argued), Clapp & Eisenberg, Newark, N.J., for appellee.

Thomas W. Greelish, U.S. Atty., Cathy Fleming, Asst. U.S. Atty., Marion Percell (Argued), Asst. U.S. Atty., Newark, N.J., for appellant.

Before: ALDISERT, Chief Judge, and GARTH and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

The major question presented in this appeal by the government from the district court's order allowing defendant Adolph "Butch" Carbone released on a one million dollar bond pending trial requires us to decide whether defendant met his burden of rebutting the presumption that he would pose a threat to the community. Carbone's trial in the New Jersey District Court is scheduled for June 10, 1986, precisely one week after the oral argument of this appeal.[1]

On review of the district court's disposition of a release or detention order, the appellate court is required to "give the reasons articulated by trial judges respectful consideration...." *United States v. Delker*, 757 F.2d 1390, 1400 (3d Cir.1985). The court of appeals should amend or reverse the district court's decision "if, after careful assessment of the trial judge's reasoning, together with such papers, affidavits, and portions of the record as the parties presents, [it] independently reaches a conclusion different from that of the trial judge...." *Id.*

■ The Bail Reform Act of 1984 authorizes judicial officers to grant persons charged with federal offenses release on bail unless it is determined that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Carbone was charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in [various narcotics acts]." § 3142(f)(1)(C). Thus, he fell within the provision that "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community." § 3142(e). In effect, these sections create a rebuttable presumption against Carbone's release and imposed the burden of producing countervailing evidence upon him. *United States v. Jessup*, 757 F.2d 378 (1st Cir.1985). The defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community. *Id.* The major issue before us is whether the defendant produced the necessary quantum of evidence at the hearings. Although the specific determinations of the magistrate and the district court are not as clearly stated as we would wish, we hold that Carbone met his burden.

Section 3142(g) provides:

**(g) Factors to be considered.—**

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

---

1. We are at a loss to understand why the government chose to rest solely on an appeal with the delays attendant in full briefing when it could have timely applied for relief in a motion for a stay of the district court's order granting bail.

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*See also United States v. Perry,* 788 F.2d 100, 106 (3d Cir.1986).

We are satisfied that Carbone met his burden of producing evidence under § 3142(g) relating to character, family ties, employment, and length of residence in the community to rebut the presumption that he poses a danger to the community. We are especially impressed that friends residing in Carbone's community posted one million dollars in property as surety. Although posting a property bond normally goes to the question of defendant's appearance at trial, where the surety takes the form of residential property posted by community members the act of placing this surety is a strong indication that the private sureties are also vouching for defendant's character. Although character evidence is normally presented by oral testimony, proffered evidence of this activity—community members who know the defendant mortgage their homes to secure his release—is at least equivalent to oral character evidence.

It was also represented at the hearing before the district court that Carbone is a first offender, that he had an offer of steady employment pending trial, and that he would be confined to his parents' home from 8:00 p.m. to 6:00 a.m. as a condition for release. The record indicates that Carbone is fulfilling his obligations of daytime employment and nighttime house confinement. In sum, our independent evaluation has not compelled us to reach a conclusion different from that of the district court.

The judgment of the district court will be affirmed.

GARTH, Circuit Judge, dissenting:

Although the majority applies the correct standard in performing its statutorily mandated *de novo* review of the bail application in this case, my reading of the record is so completely at variance with the majority's as to compel me to dissent.

It is apparent to me that the defendant, Adolph "Butch" Carbone, never sought to introduce evidence rebutting the presumption of dangerousness, and it is therefore understandable that the record is barren of any evidence which could support the majority's conclusion that Carbone had rebutted the presumption of dangerousness. It is not surprising that no such evidence was adduced, since the subject of the presumption and its rebuttal by the defendant was barely adverted to before the magistrate and before the district court. Moreover, at one point the magistrate, who coordinated the pre-trial detention hearing, went so far as to state that he did not believe that there *was* a presumption of dangerousness, but only one regarding flight. *See* app. at 250.

I would therefore hold that, in the absence of evidence rebutting the presumption of dangerousness, the district court erred in ordering Carbone's release.

I.

As the majority correctly states, the Bail Reform Act of 1984 establishes a pre-trial presumption with regard to both flight *and* dangerousness. The presumption is that "no condition or combination of conditions will reasonably assure the appearance of the person as required *and the safety of any other person and the community.*" 18 U.S.C. § 3142(e) (West 1985) (emphasis added). The presumption arises when the court finds probable cause to believe, *inter alia,* that the defendant has committed an offense under the Controlled Substances Act for which he faces a term of imprisonment of ten years or more. 18 U.S.C. § 3142(f). It cannot be disputed that the presumption applies to Carbone, who faces substantially *more* than ten years in prison for his alleged role in conducting a continuing criminal enterprise pursuant to 21 U.S.C. § 848.

Although the language of the Act providing for the presumption is clear, this court recently emphasized that there is no burden upon the United States to prove either

likelihood of flight or danger to the community *unless and until* the defendant produces sufficient evidence to rebut the presumption as to either or both factors. *United States v. Perry,* 788 F.2d 100, 107 & n. 4 (3d Cir.1986).

In addition, this court has held that "safety," as comprehended by the Act, includes a reasonable assurance that drug dealing will not continue. "The statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong,* 775 F.2d 504, 506 (3d Cir.1985). In fact, in *Perry,* we construed § 3142(e) "as addressing *only* danger to the community from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses [with which the defendant is charged]." 788 F.2d at 111 (emphasis added).

Therefore, our only appropriate inquiry in connection with the presumption of dangerousness in this case is whether Carbone introduced sufficient evidence that he would not pose a danger to the community through continued drug trafficking. Unless sufficient evidence to rebut the presumption was introduced by Carbone, the government was under no obligation to introduce any evidence whatsoever to support Carbone's pre-trial detention.

I suggest that the magistrate and the district court entirely lost sight of this standard, and instead focused their inquiries prematurely on the question whether the government had *proven* danger to the community by clear and convincing evidence. However, in conducting our plenary review, *see Perry,* 788 F.2d at 104, we must begin at the first step and determine whether Carbone successfully rebutted the initial presumption, and thereby activated the government's duty to prove dangerousness or risk of flight.

## II.

It is true that in affirming the decision of the magistrate to order Carbone's release the district court quoted the language of § 3142 as to both presumptions and held that "defendant has met his burden of production for the reasons stated by Judge Cowen." App. at 946. However, Magistrate Cowen himself, in deciding to release Carbone, simply stated that the government had failed to prove that Carbone was still a danger to the community. App. at 399–400. Nowhere in the record did the magistrate discuss any evidence introduced by Carbone to rebut the initial presumption.[1]

The magistrate referred to no evidence because no such evidence exists in this record. Faced with the same difficulty, the majority in affirming refers to evidence introduced with respect to flight and bearing solely on that issue—such as evidence of family ties, employment, and length of residence in the community. On the facts of this case, however, such evidence does nothing to rebut the presumption that arises under the statute with regard to Carbone's *dangerousness.*

In particular, the majority relies on the fact that friends residing in Carbone's community posted one million dollars in property as surety. Although acknowledging that "posting a property bond normally goes to the question of defendant's appearance at trial," the majority opinion nevertheless concludes that "where the surety takes the form of residential property posted by community members the act of placing this surety is a strong indication that the private sureties are vouching for the defendant's character." Maj. op. at 561.

The majority offers no support in either precedent or logic for this remarkable leap. In posting the bond, Carbone's friends put themselves at risk only as to Carbone's future appearance in court; the posted property would not be forfeit unless Car-

---

1. Although we are required in reviewing bail orders to "give the reasons articulated by trial judges respectful consideration," *United States v. Delker,* 757 F.2d 1390, 1400 (3d Cir.1985), we are not bound by these stated reasons, particularly where, as here, the court below has totally failed to apply the correct standard.

bone failed to appear, regardless of any other harm to the community committed by Carbone during the period of his release. There is therefore no basis for assuming that the posting of the bond by Carbone's friends amounted to general testimony as to Carbone's character, as the majority suggests.

It requires an additional illogical inference to regard this putative evidence of general "character" as tending to prove the sole relevant issue presented—whether Carbone would continue to deal drugs. In the face of what the magistrate characterized as "overwhelming" evidence that Carbone conducted a large scale drug-selling operation over a considerable period of time, app. at 265, it says much for their personal loyalty that Carbone's friends were willing to post their residential property to guarantee his appearance in court. This personal loyalty and friendship does nothing, however, to prove that Carbone will not continue the previous activities which posed a danger to the community.

The majority also relies on the fact that Carbone would, as a condition of release, be confined to his parents' home from 8:00 p.m. to 6:00 a.m. each day. However, it is common knowledge that drug dealing may be performed effectively over the phone. Indeed, it would be unusual to find that the charged head of a drug ring performed any of the menial tasks of distributing drugs himself. Such individuals are normally well-insulated from the exchange of drugs for money, although directions regarding the same may be communicated to underlings by telephone. Therefore, I am unimpressed with the curfew imposed upon Carbone, because it does nothing to prove that he would not or could not continue to deal in illegal drugs—and therefore does nothing to rebut the statutory presumption of dangerousness.

Similarly, while evidence of legitimate employment might bear upon Carbone's ability to earn a living apart from drug dealing, nothing appears in the record as to the hours of his employment, whether Carbone had free time to communicate with his former colleagues, whether he had access to a phone, how much he would earn from his new employment, and similar facts which might bear on his opportunity or need to continue his illegal activities.

The record is similarly barren of testimony by Carbone himself—which he could have given under a judicial grant of immunity, *see Perry,* 788 F.2d at 115—of his intention to sever ties with his criminal associates. Moreover, no traditional character evidence was ever offered by those whose opinions might have been relevant on the question of Carbone's propensity to continue criminal activities. Thus, the record discloses no testimony or evidence from clergy, employers, legitimate business associates, and other prominent and respected figures in the community. The majority's attempt to equate the mortgaging of homes to oral character evidence, as discussed above, is neither persuasive nor supported by any cited precedent.

### III.

In short, no evidence in the record before us supports the majority's conclusion that Carbone successfully rebutted the presumption of dangerousness under 18 U.S.C. § 3142(e). I do not know whether Carbone's failure to adduce evidence to rebut the presumption stems from a failure to focus on that issue or from the unavailability of any such evidence; in either event, no such evidence is to be found in the record, and we are obliged to apply the statute as written by Congress and construed by this court. In the absence of any evidence tending to rebut the presumption that Carbone will continue to deal drugs and, by doing so, will thereby pose a danger to the community, I would vacate the district court's order and direct that Carbone be detained. I therefore respectfully dissent from the majority's disposition.