UNITED STATES of America

v.

**Randolph KERR, Russell Keith Larew, Chester William Coates.**

**Crim. No. 87–255.**

United States District Court, W.D. Pennsylvania.

June 3, 1988.

Paul Hull, Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

Michael L. Rosenfield, Pittsburgh, Pa., for Randolph Kerr.

Stephen F. Capone, Pittsburgh, Pa., for Russell Keith Larew.

## OPINION

DIAMOND, District Judge.

Randolph Kerr and Russell Larew challenge the constitutionality of the Criminal Livelihood provision, § 4B1.3, of the Sentencing Guidelines. This provision mandates an offense level of no less than 13 and forbids probation for a defendant who "committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income." Defendants assert, first, that this provision discriminates against indigent persons in violation of the equal protection and due process principles contained in the Fifth Amendment.[1] Second, they maintain that the Criminal Livelihood guideline unconstitutionally deprives the sentencing judge of discretion. Neither argument persuades us, and we hold that the Criminal Livelihood provision complies with the due process and equal protection strictures of the Constitution.

### Background

The Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 1988, overhauled sentencing practices in the federal courts. Before its enactment, federal district court judges enjoyed nearly unbounded discretion to impose sentences within broad statutory ranges; now, guidelines promulgated by the United States Sentencing Commission, see 28 U.S.C. §§ 991–994, assign a specific offense level score for a defendant's current criminal conduct and a "Criminal History Category" for his record of past criminal conduct, which translate into a relatively narrow range of permissible sentences. See generally United States Sentencing Commission Guidelines Manual, Ch. 2, 4, 5 (1987).

Beginning with United States v. Arnold, 678 F.Supp. 1463 (S.D.Cal.1988), the federal district courts have scrutinized the Act at a

---

1. An equal protection principle identical to that of the Fourteenth Amendment is implicit in the Fifth Amendment's due process clause. Delaware River Basin Commission v. Bucks County Water & Sewer Authority, 641 F.2d 1087, 1092 n. 8 (3d Cir.1981).

furious pace, principally with regard to the constitutional doctrines of separation of powers and legislative delegation. To date, one judge in this district has declared the guidelines unconstitutional, both because placement of the Sentencing Commission in the Judicial branch violates separation of powers and because the guidelines' removal of discretion from sentencing judges offends due process. *United States v. Frank*, 682 F.Supp. 815 (W.D.Pa.1988) (Ziegler, J.).

We are not called upon in this case to determine the constitutionality of the Act as a whole with regard to any issue but due process. The parties explicitly waived any other constitutional challenges. We consider it unwise to decide important constitutional issues without the benefit of full adversarial argument.

We turn to the facts of this case.[2]

Kerr and Larew pled guilty to one count of possession of stolen mail, 18 U.S.C. § 1708. Since their offense occurred after November 1, 1987, the Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 1988, applies to their sentencing. *See* 18 U.S.C. § 3551. The probation officer prepared a presentence report for each defendant. Before application of the Criminal Livelihood provision, each defendant had an offense level of 8 and a criminal history category of IV. This translates to a sentencing range of 10 to 16 months. Guidelines Manual, p. 5.2 (Sentencing Table). Within this range, the defendants would be eligible to serve half of their sentences on supervised release. Guidelines Manual § 5C2.1(d).

However, the presentence investigation revealed that the defendants stole and cashed 40 to 50 Treasury checks worth between $10,000 and $15,000 over the past 18 months. The probation officer concluded that this was "a pattern of criminal conduct." *See* 28 U.S.C. § 994(i)(2); Guidelines Manual § 4B1.3. As the defendants had no regular employment and received $500 or less annually in public assistance,

the defendants derived a substantial portion of their income from this pattern of criminal conduct, and the probation officer recommended application of the Criminal Livelihood guideline, § 4B1.3. This guideline increases each defendant's offense level score to 13 and disqualifies them from probation. *Id.* The range of permissive sentences is 24 to 30 months, all of which must be incarceration. *See* Guidelines Manual § 5C2.1.(f).

In accordance with the guidelines, § 6A1.2, and our Local Rule 41, the defendants filed position papers raising several objections to the conclusions in the presentence report. In these papers the defendants raised the two constitutional challenges before us now. We directed the parties to brief these issues as well as the other constitutional issues raised in *Frank* and similar cases or to advise the court in writing of their decision to waive those other challenges.

In their briefs, Kerr and Larew elaborate on the argument that the Criminal Livelihood guideline and Section 994(i)(2) impermissibly discriminate against the indigent. Between two defendants who engaged in exactly the same pattern of criminal activity but who have different financial resources aside from their criminal income, the Criminal Livelihood guidelines will condemn the indigent defendant to many more months in prison and ineligibility for parole. According to Kerr and Larew, poverty functions as the sole justification for an extended term of imprisonment. They contend that it is irrational to tie the prevention of recidivism, the alleged purpose of the Criminal Livelihood provision, to a defendant's financial resources. This irrational discrimination based upon wealth violates the equal protection and due process principles explained in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), and its antecedents.

Defendant Larew also argues that the Criminal Livelihood guideline violates the statutory mandate of 28 U.S.C. § 994(d).

---

**2.** The following discussion does not constitute our tentative findings and rulings concerning disputed facts or factors. *See* Local Rule 41H.

We will issue those at a later date. In this opinion and order, we rule on only the constitutional challenges Kerr and Larew have raised.

That section commands the Sentencing Commission to "assure that the guidelines and policy statements are entirely neutral as to the race, sex, national original, creed, and *socioeconomic status* of offenders." (emphasis added).

Relying on *United States v. Frank, supra,* the defendants further argue that the guideline's divestment of judicial sentencing discretion violates due process. They acknowledge that the legislature can eliminate sentencing discretion, but "the application of a mechanical sentencing procedure which prohibits the sentencing court from assessing circumstances applicable to a Defendant does violate rights of due process of law." Brief in Support of Defendant Larew's Position Paper Regarding Sentencing 5. The guidelines' evil lies in the severe restrictions they place on the weight to be given the mitigating circumstances traditionally offered in sentencing.

The government concedes that all other things being equal, the Criminal Livelihood provision may result in more severe treatment for an indigent defendant. Government's Response With Respect to the Constitutionality of the Criminal Livelihood Provision of the Guidelines 3. However, since indigency is not a suspect classification, statutory distinctions based upon it will be upheld so long as the distinction "bears some rational relationship to a legitimate state purpose." *United States v. Hawkins,* 811 F.2d 210, 216 (3d Cir.1987). *See also Marshall v. United States,* 414 U.S. 417, 422, 94 S.Ct. 700, 704, 38 L.Ed.2d 618 (1974). According to the government, the legislative history of the Dangerous Special Offender statutes, 18 U.S.C. § 3575(e)(2) (repealed by Pub.L. 98–473, Title II, § 219(a), Oct. 12, 1984, 98 Stat. 2027), and 21 U.S.C. § 849(e)(2) (repealed by Pub. L. 98–473, Title II, Ch. II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1987), upon which the Criminal Livelihood provision is based in part, indicates a rational basis for these distinctions. These statutes aim at preventing recidivism by imposing heavier penalties on professional criminals, those who make their livelihood from crime. An increased penalty is imposed "because the defendant has chosen crime as a profes-

sion, as indicated by a pattern of criminal activity and a lack of any other means of livelihood," not because the defendant is indigent. Government's Response 12–13.

The government argues that *Frank* was decided incorrectly. The power to specify punishment for crimes belongs to the legislative branch. Only when faced with the death penalty does a defendant have a constitutional right to individualized and discretionary punishment.

*Discussion*

A. Discrimination Against the Indigent.

■ Initially, we find unconvincing Larew's argument that the Criminal Livelihood guideline deviates from the statutory mandate. Section 994(d) of Title 28 demands neutrality as to socioeconomic status, but this command is not absolute. *See* S.Rep. No. 98–225, p. 171 n. 409, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3354. It is unlikely that the Criminal Livelihood provision of the guidelines offends the statutory directive, for the provision is not an innovation of the Sentencing Commission; rather, it comes verbatim from another subsection of the same statute upon which Larew relies: "The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which *the defendant committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income."* 28 U.S.C. § 994(i)(2) (emphasis added). We accept this more specific language as more precise indication of the Congressional intent. *See Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974).

■ The statutory issue aside, we hold that the Criminal Livelihood provision does not unconstitutionally discriminate on the basis of a defendant's financial resources. Although we reach the same result that the government advocates, our analysis differs. We subject this legislation to more searching scrutiny, but we find that it still passes constitutional muster.

Undoubtedly, the Criminal Livelihood provision discriminates on the basis of wealth. The guidelines and the Sentencing Reform Act do not define "a substantial portion of his income." The legislative history states that Congress adopted this language from the Dangerous Special Offender statutes, 18 U.S.C. § 3575(e)(2), and 21 U.S.C. § 849(e)(2). *See* S.Rep. No. 98–225, pp. 172–173, 176, 1984 U.S.Code Cong. & Admin.News, pp. 3355, 3356, 3359. Those little-used provisions of those statutes defined as a dangerous special offender a defendant who committed a felony as part of a pattern of criminal conduct, "which constituted a substantial source of his income." The statutes went on to define "substantial source" as an amount which exceeds the yearly minimum wage under the Fair Labor Standards Act, 29 U.S.C. § 206(a)(1) (approximately $6,700), and which exceeds half of the defendant's declared adjusted gross income. 18 U.S.C. § 3575(e); 21 U.S.C. § 849(e). Since we do not detect any Congressional intent to alter this definition and since we find that the definition's purpose of providing an explicit, convenient, and objective measure of proof to be wise, we adopt it as definitive of the "substantial portion" language within the guidelines. Using this definition, the Criminal Livelihood provision applies to Larew and Kerr under the facts as stated in the presentence report, but it would not apply to a person of identical criminality but having a declared adjusted gross income of over $30,000. If a person of this income engaged in the identical pattern of criminal conduct and had the same criminal history as Kerr and Larew, he would receive a sentence of between 10 and 16 months and be eligible for probation, while Kerr and Larew face 24 to 30 months with no possibility of probation, solely because they lack the financial resources of the richer defendant.[3]

▮ Poverty is not a suspect classification; laws discriminating on that basis are not subject to strict scrutiny. *Harris v. McRae,* 448 U.S. 297, 323, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). Consequently, the government urges that we apply a "rational basis" test. Under this test, the legislation enjoys a strong presumption of constitutionality, *see Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979), and we must sustain unless no "state of facts reasonably may be conceived to justify it," *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), or unless the classification " 'rests on grounds wholly irrelevant to the achievement of the State's objective,' " *United States v. Hawkins,* 811 F.2d at 216–17 (*quoting McGowan,* 366 U.S. at 425, 81 S.Ct. at 1104).

This analysis is not appropriate in this case. The Supreme Court has been more demanding of laws that disadvantage the indigent within the criminal justice system. *See Maher v. Roe,* 432 U.S. 464, 471 n. 6, 97 S.Ct. 2376, 2381 n. 6, 53 L.Ed.2d 484 (1977); *see generally* Tribe, American Constitutional Law § 16–35 (2d ed. 1988); Nowak, Rotunda & Young, Constitutional Law 732 (2d ed. 1983). At stake here is not mere economic or social welfare regulations but deprivation of a man's liberty. The courts "will squint hard at any legislation that deprives an individual of his liberty—his right to remain free." *Williams v. Illinois,* 399 U.S. 235, 263, 90 S.Ct. 2018, 2033, 26 L.Ed.2d 586 (1970) (Harlan, J., concurring). Moreover, the indigent, though not a suspect class, have suffered unfair persecution. *See Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Foote, Vagrancy–Type Law & Its Administration, 104 U.Pa.L.Rev. 603 (1956).

In *Williams v. Illinois, supra,* the Supreme Court held that confining a person beyond the statutory maximum sentence solely because of his inability to pay a fine and court costs violates equal protection.

---

**3.** The disparate impact of the Criminal Livelihood provision falls on more than the indigent. A person earning $25,000 per year also would suffer the provision's disparate application. The absence of a clearly defined economic class is of no consequence; our focus is on the fairness of the provision's wealth-based distinctions. *See Bearden,* 461 U.S. at 666 n. 8, 103 S.Ct. at 2069 n. 8.

1179 at the top right

This practice was both ancient and widespread. 399 U.S. at 239–40, 90 S.Ct. at 2021. The Court noted that it served the legitimate purpose of enforcing obedience to the court's sentence. *Id.* at 240, 90 S.Ct. at 2021; *id.* at 264, 90 S.Ct. at 2033 (Harlan, J., concurring). Despite the burden that forbidding this practice would impose on the administration of criminal justice, *id.* at 245, 90 S.Ct. at 2024, the Court held that the constitutional obligation "to mitigate the disparate treatment of the indigent in the criminal process," *id.* at 241, 90 S.Ct. at 2022, required the states to seek other means of vindicating their interests.

In a concurring opinion, Justice Harlan reasoned that a due process analysis was more appropriate than an equal protection inquiry with its rigid tiers of scrutiny. Due process suggests a more flexible analysis, sensitive to the nature of the interests involved. *Id.* at 262, 90 S.Ct. at 2032. Justice Harlan further emphasized that where, as in *Williams,* the deprivation of liberty was at issue, the courts should show less than usual deference to legislative judgments. *Id.* at 263, 90 S.Ct. at 2033.

In *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the Court reiterated its "sensitiv[ity] to the treatment of indigents in our criminal justice system." *Id.* at 664, 103 S.Ct. at 2068. The Court noted that due process and equal protection analyses converge in this context, and the Court adopted Justice Harlan's approach in *Williams:*

> [T]he issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose [and] the existence of alternative means for effectuating the purpose...."

461 U.S. at 666–667, 103 S.Ct. at 2069 (*quoting Williams,* 399 U.S. at 260, 90 S.Ct. at 2031 (Harlan, J., concurring)). The ultimate question "is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process." *Bearden,* 461 U.S. at 666 n. 8, 103 S.Ct. at 2069 n. 8. The court held that it was fundamentally unfair to revoke an offender's probation for his inability to pay a fine unless the sentencing court found alternatives to imprisonment inadequate.

In *Bearden,* Georgia attempted to justify revocation of probation with the argument that the indigent probationer would be tempted to commit crimes. *Id.* at 671, 103 S.Ct. at 2072. The Court acknowledged that there is a correlation between poverty and crime. *Id.* at 671 n. 11, 103 S.Ct. at 2072 n. 11. Nonetheless, a person cannot be punished solely for his poverty. *Id.* at 671, 103 S.Ct. at 2072; *see Edwards v. California,* 314 U.S. 160, 177, 62 S.Ct. 164, 168, 86 L.Ed. 119 (1941). As a matter of constitutional belief, the presumption that the indigent will act criminally "is too precarious for a rule of law." *See Papachristou,* 405 U.S. at 171, 92 S.Ct. at 848. Where the sentencing court had expressed its judgment that imprisonment was unnecessary for this offender by placing him on probation and where the probationer made bona fide efforts to pay his fine, revocation of probation for inability to pay was nothing more than a penalty on poverty.

From *Bearden* and *Williams,* we cull several principles. We must show more sensitivity to classifications that affect the indigent within the criminal justice system than to other non-suspect classifications. We will not accept any conceivable rational justification for disparate treatment of the indigent. Despite some empirical support for the proposition that the indigent are more likely to engage in criminal conduct than other segments of society, punishment cannot be based on the sole fact of indigency. Rather, we are commissioned to strike down treatment of the indigent that is fundamentally unfair. Finally, discriminatory legislation will not survive challenge if adequate alternatives to the same objective are available, even if those alternatives are less convenient.

However, in *Bearden* the court emphasized that its holding did not prohibit a

sentencing court from considering a defendant's employment history and financial resources in setting a sentence. 461 U.S. at 670, 671, 103 S.Ct. at 2071, 2072. *See also San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 22, 93 S.Ct. 1278, 1290, 36 L.Ed.2d 16 (1973). When viewed in the context of a pattern of criminality, the lack of employment and of legitimately obtained financial resources does indicate that the defendant is likely to commit further crimes, and the deprivation of liberty may be based upon it. *See United States v. Suppa*, 799 F.2d 115, 120 (3d Cir.1986) (employment history bears on finding of dangerousness under the Bail Reform Act). The courts do not have a constitutional mandate to eradicate all statutes that fall more heavily on the indigent. *Ross v. Moffitt*, 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974); *Douglas v. California*, 372 U.S. 353, 361, 83 S.Ct. 814, 818, 9 L.Ed.2d 811 (1963) (Harlan, J., dissenting).

Applying these principles, we conclude that the use of a defendant's financial background made by the Criminal Livelihood provision is not fundamentally unfair. As we have discussed, this provision descends from the Dangerous Special Offender statute. That statute had as its objective imposing enhanced punishment to incapacitate professional criminals who may lack the prior convictions necessary to bring them within recidivist statutes. H.Rep. No. 91–1549, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin. News 4007, 4038. These offenders make their living from crime; that fact indicates that their criminality is likely to continue. *See* Organized Crime Control: Hearings on S.30 and Related Proposals Before Subcomm. No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess., p. 129 (1970) (statement of Sen. McClellan); *id.* at 172, 174, 1984 U.S.Code Cong. & Admin. News, pp. 3355, 3357 (Department of Justice comments). Thus, indigency is not the sole justification for the harsh treatment of offenders like Kerr and Larew under the guidelines. Rather, their pattern of criminality, a pattern upon which they depend

for their livelihood, demonstrates a need for their incapacitation.

The requirement that they derive a substantial portion of their income from this pattern furthers the legitimate purpose of incapacitating professional criminals. Congress rationally may conclude that a person who depends upon criminality for a living and has no other vocation is more likely to continue his criminal ways than one for whom crime is an avocation. *See United States v. Carbone*, 793 F.2d 559, 563 (3d Cir.1986) (Garth, Jr., dissenting) (Under the Bail Reform Act, "evidence of legitimate employment might bear upon [the defendant's] ability to earn a living apart from drug dealing"). The defendant who has an income to which crime does not contribute a substantial portion does not depend on crime; his prospects for returning to a legitimate lifestyle may be better.

Similarly, the alternative to the achievement of the Criminal Livelihood provision's legitimate aim is inadequate. Elimination of the "substantial portion" requirement would eliminate any wealth-based disparity; any person convicted of an offense committed as a part of a "pattern of criminal conduct" would be within the provision. Rightfully so, it may appear: after all, the past harm of the rich and poor offenders' conduct is the same, regardless of each offender's other income. However, this alternative misses the provision's focus: to prevent professional criminals from committing future offenses.

We recognize that it may be argued that the indigent person commits crimes of necessity; therefore, if offered job training and opportunities, he is likely to leave behind his criminal ways. On the other hand, the person who has a substantial legitimate income but who nonetheless engages in a pattern of criminal conduct has no excuse for his criminality. Since his incentive for crime is not understandable financial necessity but some more obscure quirk of his personality, rehabilitation is unlikely.

Our function is not to resolve these controversies of penological policy. As the Supreme Court stated while striking down a recoupment statute that discriminated

against the indigent, "We do not inquire whether this statute is wise or desirable, or 'whether it is based on assumptions scientifically substantiated.' ... Misguided laws may nonetheless be constitutional.... Our task, however, is not to weigh this statute's effectiveness but its constitutionality." *James v. Strange,* 407 U.S. 128, 133, 92 S.Ct. 2027, 2030, 32 L.Ed.2d 600 (1972) (citations omitted). Our conclusion might be different had defendants advised us of legislative facts demonstrating that the Criminal Livelihood provision's wealth-based distinction does not further any valid governmental objective. *See Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979); *New Jersey Citizen Action v. Edison Township,* 797 F.2d 1250, 1257–1260 (3d Cir.1986); P. Brest, Processes of Constitutional Decision–Making, Ch. 8 (1975). On this record, however, even looking through the hard "squint" of *Williams* and *Bearden,* we are persuaded that the Criminal Livelihood provision furthers a legitimate governmental purpose.

**B. Due Process.**

Defendants challenge on due process grounds the way in which the Criminal Livelihood provision restricts judicial discretion. Since the alleged evil of removing discretion is evident throughout the whole Sentencing Reform Act, we will discuss the guidelines as a whole.

■ The defendants' challenge forces us to consider and reject the court's due process ruling in *Frank.* While, of course, we give great weight and respect to a fellow judge's considered decision, we are not bound by it. *Starbuck v. City and County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977). And, as Justice Douglas wrote,

A judge looking at a constitutional decision may have compulsions to revere past history and accept what was once written. But he remembers above all else that it is the Constitution which he swore to uphold, not the gloss which his predecessors may have put on it. So he comes to formulate his own views, reject-ing some earlier ones as false and embracing others.

Douglas, Stare Decisis, 49 Colum.L.Rev. 735, 736 (1949). *See also Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 405–408, 52 S.Ct. 443, 446–448, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting).

In *Frank,* Judge Ziegler found that the ranges set by the guidelines and the restrictions put upon departures from those ranges "severely restrict a district court's ability to individualize a defendant's sentence." 682 F.Supp. at 817. The court reasoned that the defendant's due process right to reliability in the information upon which a sentence is based includes the right to participate in the weighing of this information. At 818–819. By assigning specific values to facts and forbidding the use of certain factors to justify departures, *see* Sentencing Guidelines, §§ 5H1.1–1.10, 5K2.0–2.14, the guidelines preclude the defendant from presenting, and the court from weighing, certain mitigating circumstances. At 819. Applying the procedural due process analysis of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976), the court concluded that the guidelines' removal of judicial discretion creates a risk of error too great to be countenanced when an individual's liberty is at stake.

Several district courts have followed *Frank,* with some variations. In *United States v. Elliott,* 684 F.Supp. 1535 (D.Colo. 1988), the court reasoned that while Congress can remove judicial discretion in sentencing entirely by setting specific sentences, "Congress cannot combine a grant of [sentencing] discretion to the courts with such restrictions that the results of the adjudicative processes are dictated." The guidelines make a sentencing hearing meaningless by depriving the defendant of an opportunity to convince the court that the peculiar circumstances of his case warrant lenient treatment. The court found that the guidelines operated as conclusive presumptions lacking a rational basis.

Similarly, in *United States v. Bolding,* 683 F.Supp. 1003 (D.Md.1988), the court reasoned that since Congress left in place

the statutory sentencing ranges, there exists "a sphere of discretionary power which is inherently judicial in nature." The mechanical application of an administrative code to sentencing violates the "accountability, reason, and a fair opportunity to be heard" essential to due process.

The Central District of California, sitting en banc in *United States v. Lopez*, 684 F.Supp. 1506 (1988), emphasized that individualized sentencing is a "traditional and fundamental" judicial function. Following *Frank*, the court found that the guidelines' restrictions on the weighing process created a grave risk of error. A return to judicial discretion would decrease this risk of error. In dissent, Judge Hupp rejected the proposition that discretionary sentencing is a traditional and fundamental judicial function. Congress can divest the courts totally of sentencing discretion; therefore, it can limit that discretion.

Judge Mazzone, of the District of Massachusetts, rejected a due process challenge in *United States v. Alves*, 688 F.Supp. 70 (1988). Judge Mazzone pointed out that the extent to which the guidelines curtail a defendant's participation in sentencing process may be overstated. Judicial discretion remains, but it is channelled. The defendant still may challenge the factual basis for a sentence. In significant respects, the defendant enjoys greater procedural protections. He is entitled to a statement of reasons for a sentence, and sentences are subject to appellate review.

Underlying *Frank* and the decisions following it is the belief that a defendant being sentenced possesses a due process right to the exercise of judicial discretion based upon " 'the circumstances of the offense together with the character and propensities of the offender.' " *Williams v. New York*, 337 U.S. 241, 247 n. 8, 69 S.Ct. 1079, 1083 n. 8, 93 L.Ed. 1337 (1949) (*quoting Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 60, 82 L.Ed. 43 (1937)). But the Supreme Court has emphasized repeatedly that, though perhaps enlightened policy, individualized sentencing is not a constitutional imperative outside capital cases. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2419–2420, 91 L.Ed.2d 67, 79–80 (1986); *Lockett v. Ohio*, 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality op.); *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). Likewise, the lower federal courts have upheld mandatory sentences that eliminate judicial discretion. *See, e.g., United States v. Goodface*, 835 F.2d 1233 (8th Cir.1987) (mandatory five year increase in sentence when a gun is used in a crime of violence, 18 U.S.C. § 924(c)); *United States v. Smith*, 818 F.2d 687, 691 (9th Cir.1987) (mandatory $25 special assessment for misdemeanor convictions, 18 U.S.C. § 3013); *Smith v. United States*, 284 F.2d 789, 791 (5th Cir.1960) (mandatory twenty-five year imprisonment for certain assaults on postal officials, 18 U.S.C. § 2114).

Broad judicial discretion in sentencing does have a long tradition in this nation. *See United States v. Grayson*, 438 U.S. 41, 45–46, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978); *Dorszynski v. United States*, 418 U.S. 424, 440, 94 S.Ct. 3042, 3051, 41 L.Ed. 2d 855 (1974). There is also a long tradition, however, of criticism of discretionary sentencing on due process grounds for the unaccountable and standardless way in which sentencing discretion is exercised. *See United States v. DiFrancesco*, 449 U.S. 117, 142–143, 101 S.Ct. 426, 440, 66 L.Ed.2d 328 (1980); ABA Project on Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences 1–2 (1968); M. Frankel, Criminal Sentences: Law Without Order (1972); K.C. Davis, Discretionary Justice: A Preliminary Inquiry (1969); Lindsey, Historical Sketch of the Indeterminate Sentence and Parole System, 16 J. of the Am.Inst. of Crim.L. and Criminology 9, 41–52 (1925). Under the prior federal sentencing regime, the sentencing judge generally had no obligation to explain or justify his sentence. *See United States v. Bazzano*, 712 F.2d 826, 838–39 (3d Cir.1983) (en banc); *United States v. Bazzano*, 570 F.2d 1120, 1130–38 (3d Cir.1977) (Adams, J., concurring) (criticizing this practice). Each judge could as-

sign any weight he saw fit to the circumstances of the defendant's crime and background. The result was disparities in sentences based more on each judge's preconceptions than on each defendant's needs. *See* S.Rep. No. 98–225, pp. 38–46, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3221–29; Crump, Determinate Sentencing: The Promises and Perils of Sentence Guidelines, 68 Ky.L.J. 1, 49–51 (1979).

These seemingly capricious sentencing disparities motivated adoption of the sentencing guidelines and similar systems throughout this country. *See* 28 U.S.C. § 991(b)(1)(B); Guidelines Manual, p. 1.2.; *State v. Hodge*, 95 N.J. 369, 471 A.2d 389, 395 (1984); *see generally* National Institute of Justice, Sentencing Reform in the United States (1985) (reviewing trend among the states toward presumptive and guideline sentencing). The federal guidelines appear to be a vast improvement in accountability and rationality, which so concerned the court in *United States v. Bolding, supra.* Under the guidelines, a defendant and his counsel can predict the weight and effect of each factor of his crime and background. The court must state its reasons for defendant's sentence. *See* 18 U.S.C. § 3553(c)(1). The defendant also may benefit from greatly expanded appellate review of sentences. *See* 18 U.S.C. § 3742. Similarly situated defendants before different judges ought to receive comparable sentences; no longer will sentences depend on the luck of the draw.

We have outlined these issues not to resolve them, but to demonstrate that the Sentencing Guidelines are part of a historical debate among viable penological positions. Ultimately, whether the Sentencing Guidelines are wise and just is a question for Congress, not for us. *See Gregg v. Georgia*, 428 U.S. 153, 175–176, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976) (plurality op.); *Gore v. United States*, 357 U.S. 386, 393, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958). The Legislative branch has plenary power to fix punishments and to choose the objectives that punishment will serve. *See Ex parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916); *Geraghty*

*v. United States Parole Commission*, 719 F.2d 1199, 1211–1212 (3d Cir.1983). This includes the power to bring within and to exclude from judicial consideration the defendant's background and rehabilitative potential. *Ex parte United States*, 242 U.S. at 42, 37 S.Ct. at 74. The judiciary's function is to determine guilt and to impose the sentence provided by law, *see Geraghty*, 719 F.2d at 1211; *State v. Mulcare*, 189 Wash. 625, 66 P.2d 360, 362 (Wash.Sup.Ct. 1937), and to assure that the sentence does not offend specific constitutional rights. *See Gregg*, 428 U.S. at 174–175, 96 S.Ct. at 2925–2926.

We agree with the dissent in *United States v. Lopez, supra,* that from Congress' power to eliminate entirely judicial discretion in sentencing follows the power to limit discretion and assign specific values to sentencing factors. "[L]egislatures remain free to decide *how much* discretion in sentencing should be reposed in the judge or jury in noncapital cases." *Lockett*, 438 U.S. at 603, 98 S.Ct. at 2964 (emphasis added). Discretion once given need not and ought not expand to the absolute. *See* K. Davis, Discretionary Justice (1969); Crump, *supra*, 68 Ky.L.J. at 54. Judicial discretion pursuant to a statute must be exercised according to standards implicit or explicit in the statute. *See Albermarle Paper Co. v. Moody*, 422 U.S. 405, 416–417, 95 S.Ct. 2362, 2370–2371, 45 L.Ed.2d 280 (1975).

Of course, if a judge is given discretion by statute, he cannot refuse to exercise it. This is the basis of *United States v. Barker*, 771 F.2d 1362 (9th Cir.1985), relied upon by the court in *Frank*. In *Barker*, the court held that a judge given sentencing discretion by statute could not mechanically impose sentence based upon the crime and disregard the offender's individual circumstances. *Barker* does not state that there is a constitutional right to individualized sentencing. *See Nation v. Georgia*, 645 F.Supp. 179, 180 (N.D.Ga.1986) (Since *Barker* and related cases do not embody constitutional principles, they do not apply to federal review of state sentences.).

We fail to see how the guidelines' limitations on judicial discretion will increase the risk of error. The concept of "error" assumes that there is a correct sentence for each crime and offender. But sentencing is not a factual determination so much as a value judgment in which there is no correct result. *See* Wright, Federal Practice & Procedure: Criminal 2d, § 526, p. 96 (1982). The guidelines do not alter the defendant's right to challenge the factual premises underlying his sentencing and the court's obligation to ensure that the sentence is based on reliable information. *See United States v. Alves, supra.*

"Error" may mean in this context that relevant evidence is excluded. *See Frank,* 682 F.Supp. at 819. However, whether evidence is relevant depends upon the issues in the case as defined by the substantive law. *See* Weinstein & Berger, Weinstein's Evidence, ¶ 401[03], p. 401–19 (1986). Congress' power to set penological policy and choose the sentences necessary to further those policies authorizes it to define the issues and the relevancy of evidence.

A comparison with the constitutional rules for capital sentencing is useful. In that context, the "Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor,* any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964–2965. The substantive law, the Eighth Amendment, requires individualized sentencing, *see id.* at 602–605, 98 S.Ct. at 2963–2964; this law makes evidence of the defendant's character, background, and offense relevant and important, and to ensure a fair sentence, the sentencing authority must consider it. However, the court still may exclude evidence irrelevant to the defendant's character, background, and offense. *Id.* at 604 n. 12, 98 S.Ct. at 2965 n. 12.

As we have discussed, in the noncapital context, a defendant has no right to an individualized sentence. The legislature is free to determine "[t]he comparative gravi-

ty of criminal offenses and whether their consequences are more or less injurious," *Pennsylvania ex rel. Sullivan,* 302 U.S. at 55, 58 S.Ct. at 60, as Congress and the Sentencing Commission have done with the guidelines and the Criminal Livelihood provisions. The defendant has no constitutional right to present evidence irrelevant to the setting of a proper punishment as "proper" is defined by the legislature.

Finally, we do not find the guidelines to be as complete a bar to judicial discretion as did the *Frank* court. *See United States v. Alves, supra.* The Sentencing Reform Act carried forward 18 U.S.C. § 3661, which states:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

The court may use this information to choose what it thinks is an appropriate sentence within the guidelines' ranges or to depart from the guidelines. Generally, the top term of imprisonment in the range exceeds the bottom by twenty-five per cent (30 versus 24 months in this case), a not insignificant area in which the court can exercise discretion. Where the minimum sentence within the range is six months or less, the court is free to impose probation rather than incarceration as it sees fit. *See* Guidelines § 5B1.1. Finally, the Sentencing Reform Act vests the court with discretion to depart from the Guidelines if "there exists an aggravating or mitigating circumstance of a kind, or to a degree that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *see* Alschuler, Departures and Plea Agreements Under the Sentencing Guidelines, 117 F.R.D. 459 (1987) (maintaining that the guidelines leave ample room for departures).

## Conclusion

For the reasons we have stated, we hold that the Criminal Livelihood provision of

the Sentencing Guidelines does not unconstitutionally discriminate on the basis of wealth; further, we hold that the guidelines' restrictions on judicial discretion do not violate due process.

An appropriate order will follow.

## ORDER OF COURT

AND NOW, this 3rd day of June, 1988, defendants Randolph Kerr and Russell Keith Larew having challenged the constitutionality of the Sentencing Guidelines, IT IS ORDERED that for the reasons stated in the opinion filed this date the defendants' challenges are rejected and the Sentencing Guidelines shall apply to this case.