**UNITED STATES of America**

v.

**Adrian MASTRANGELO, Jr.**

**Crim. A. No. 94–522–5.**

United States District Court,
E.D. Pennsylvania.

June 20, 1995.

Eloise Howard, Asst. U.S. Atty., Philadelphia, PA, for plaintiff.

Stephen P. Patrizio, Dranoff and Patrizio, P.C., Philadelphia, PA, for defendant.

## FINDINGS OF FACT & CONCLUSIONS OF LAW

ANITA B. BRODY, District Judge.

And now this 20th day of June 1995, upon consideration of the government's motion for revocation of release order filed pursuant to 18 U.S.C. § 3145(a) and following an evidentiary hearing held June 15, 1995, I find that the government has proven by a preponderance of the evidence that there are no conditions of release or combination of conditions of release that will reasonably assure Mr. Mastrangelo Jr.'s appearance as required. Therefore, detention of the defendant pending trial is ordered.

### *Findings of Fact*

■ As required by 18 U.S.C. § 3142(i), I make the following findings of fact:

1. Adrian Mastrangelo Jr. is the subject of a multi-count multi-defendant indictment, filed on December 14, 1994. He is charged in count 2 with conspiracy to manufacture in excess of one kilogram of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C.

§ 841(a)(1) and 841(b)(1)(A)(viii), and in count 12 with attempt to manufacture methamphetamine and aiding and abetting the attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

2. If convicted Mr. Mastrangelo Jr. faces a mandatory minimum period of life imprisonment without parole.

3. On December 19, 1994, at 6:30 A.M. James Nelson a Philadelphia detective with the Drug Enforcement Agency (DEA) went to the defendant's residence at 926 Hoffman Street to find the defendant. The defendant was not there.

4. On December 19, 1994 at 7:30 A.M. James Nelson went to the residence of Phyllis Vizzachero, the defendant's girlfriend, at 6842 Regent Street to find the defendant. The defendant was not there. Mr. Nelson showed Ms. Vizzachero the arrest warrant for the defendant stating the charges against him, gave her a card with the phone number of the DEA, and told her to have the defendant contact the DEA when she next saw him. The defendant never contacted the DEA.

5. On February 15, 1995, the defendant's case was turned over to William Plitt, a United States Marshal.

6. On February 21, 1995 Marshal Plitt went to the 6800 block of Regent Street with another marshal to look for the defendant.

7. Through the use of a court order for a trap and trace on Ms. Vizzachero's phone and for her bank records Marshal Plitt determined that defendant was in the Drexel Hill area of Pennsylvania. On April 25, 1995 he went to the Drexel Brook apartment complex to look for the defendant.

8. At the Drexel Brook apartment complex it was determined that the defendant was working for Total Construction Inc. (TCI Construction), and a phone call to TCI Construction confirmed that information.

9. Marshal Plitt then went to TCI Construction to look for the defendant. Although the defendant was not at TCI Construction, his truck was at the site.

10. While at TCI Construction Marshal Plitt spoke with Ralph Mastrangelo, another TCI employee and a relative of defendant, who confirmed that defendant worked for TCI Construction and was paid under the table by Vincent James Angelini, the owner. Marshal Plitt informed Ralph Mastrangelo of the charges against the defendant and had him sign a form stating that he was aware that it was illegal to harbor or conceal a person for whom an arrest warrant has been issued (Exh. G–4). Marshal Plitt also gave Ralph Mastrangelo his card and told him to inform the defendant that he should turn himself in.

11. That same day Mr. Angelini phoned Marshal Quinn, Marshal Plitt's supervisor, and verified that defendant worked for him and that he was paying him under the table. Mr. Angelini also told Mr. Quinn that defendant's work schedule was erratic and that he is often out of town. Marshal Quinn informed Mr. Angelini that there was a warrant issued for the defendant's arrest.

12. The trap and trace on Phyllis Vizzachero's phone line showed phone calls being made from Ralph Mastrangelo's home to Phyllis Vizzachero's home as well as from TCI Construction to her home after April 25, 1995.

13. On May 15, 1995 a court order was obtained for an electronic device to be put on Phyllis Vizzachero's car, enabling her car to be followed. The device was placed on her car on May 18, 1995.

14. On May 19, 1995, at 11:40 P.M. Marshal Plitt, and other marshals followed Ms. Vizzachero's car to her sister's home in Aston, Pennsylvania where they saw Ms. Vizzachero and a man fitting the description of the defendant.

15. The marshals then informed the police that they were going to try to arrest the defendant and they surrounded the house. After a phone call into the home informing the occupants that the house was surrounded and that everyone should come out Ms. Vizzachero's sister and husband exited the house. They verified that the defendant and Ms. Vizzachero were still in the house, and

that the husband's weapons were also in the home.

16. After a second phone call into the home the mother of the owner of the residence exited the house.

17. Marshal Plitt then phoned into the house two more times. On the final call he spoke with the defendant, and a short while later both he and Ms. Vizzachero exited the house.

18. Ms. Vizzachero and the defendant were then read their rights, and were searched.

19. A piece of paper was found on Ms. Vizzachero with the name of Marshal Plitt's partner, Marshal Hotchkiss, and his hometown in Connecticut. She got this information from Ralph Mastrangelo who had told her that Marshal Hotchkiss was looking for the defendant.

20. After the defendant was arrested on May 20, 1995, it was established that Phyllis Vizzachero and the owners of the house knew that the defendant was wanted. It was also verified that this was not the first time that the defendant had stayed at that house.

21. Phyllis Vizzachero has been charged with harboring a fugitive.

22. Approximately five hundred hours were expended from February of 1995 through May 20th of 1995 searching for the defendant.

23. Evidence indicated that although an arrest warrant was first executed for the defendant on December 19, 1995, he was not arrested until May 20, 1995.

24. The defendant's criminal history is as follows:

1) On November 7, 1973, defendant was arrested in Philadelphia, Pennsylvania, and was subsequently convicted of conspiracy and unlawful use of a communication facility. He was sentenced in federal court by Judge Green to five years probation and a $200 fine.

2) On December 19, 1974, defendant was arrested in Philadelphia, Pennsylvania, and was subsequently convicted of carrying a firearm without a license and possession of an instrument of crime. He was sentenced by Judge Huyett in September of 1975 to 18 months imprisonment.

3) On April 10, 1975, defendant was arrested in Philadelphia, Pennsylvania, and pled guilty to aiding and abetting the distribution of a non narcotic controlled substance. He was sentenced in federal court by Judge Newcomer to two and a half years imprisonment to be followed by two years special parole.

4) On August 2, 1980, the defendant was arrested in Philadelphia, Pennsylvania, and he subsequently pled guilty to manufacture or delivery of a controlled substance—methamphetamine. On December 13, 1984, he was sentenced to two to five years imprisonment.

5) On March 12, 1981, defendant was arrested in Philadelphia, Pennsylvania, and was convicted of possession of a controlled substance. On June 19, 1981 he was sentenced to 6 months to one year imprisonment.

6) On June 2, 1981, defendant was arrested in Philadelphia, Pennsylvania, and was subsequently convicted of receiving stolen property. On December 12, 1984, he was sentenced to two to five years imprisonment.

7) On November 22, 1983, defendant was arrested in Blakeslee, Pennsylvania, in Carbon County. He subsequently pled guilty to aggravated assault and criminal mischief before Carbon County Common Pleas Court Judge Lavelle. The circumstances regarding this arrest are as follows: The state police set up a road block in an attempt to serve the defendant with bench warrants issued by the Philadelphia Common Pleas Court, and the defendant rammed his car into an unmarked police vehicle causing property damage to the car and placing an officer's life in danger. After defendant was subdued a loaded semiautomatic pistol was found on the floor of his vehicle. He was also using a Pennsylvania operator's license in the name of Frank P. Villari.

8) On March 1, 1984, defendant was arrested in Philadelphia, Pennsylvania, and was subsequently convicted of conspiracy

to manufacture and distribute methamphetamine. He was sentenced to five years imprisonment.

25. Defense counsel represented that the following people are willing to put up their property to secure the bond for defendant's release [1]:

1) Phyllis Vizzachero:
6842 Regent St. Phila., PA 19142
FMV: $40,000

2) Ralph Mastrangelo
665 Fern St., Yeadon, PA
FMV: $175,000

3) Adrian Henry Mastrangelo
1413 S. 12th St., Phila, PA.
FMV: $30,000

4) Vincent James Angelini and Michele Angelini
Building lots known as "Holiday Poconos" Lots, 105, 107, 104, 11, 109, 912, 911, 110, 136 and 8, Township of Kidder, Carbon County, PA
FMV: $110,000

5) Total Construction, Inc.
Building Lot #1 Blackberry Lane, Charlestown Township, Chester Co., PA
FMV: $125,000

6) Total Construction, Inc.
Building Lot #2, Springfield Township, Delaware County, PA
FMV: $46,200

7) Total Construction, Inc.
Building Lot #240, Clifton Heights Borough, Delaware County, PA
FMV: $30,000

8) Total Construction, Inc.
328 E. Berkley St., Lot #182, 183, 184, Clifton Heights Borough, Delaware County, PA
FMV: $35,000

26. Mr. Angelini has offered to continue to employ the defendant at TCI construction [2].

---

**1.** During the hearing on June 15, 1995 counsel for the government did not challenge defense counsel's assertion that these people are willing to post their property for defendant. Because this fact was not contested I will assume that it is true for purposes of this determination.

*Conclusions of Law*

1. On June 13, 1995, The United States filed this motion under 18 U.S.C. § 3145(a)(1) for revocation of the order of release filed by Magistrate Leompora on June 9, 1995.

■ 2. My review of the Magistrate's decision to release defendant pending trial is *de novo*. *U.S. v. Delker*, 757 F.2d 1390, 1394 (3d Cir.1985).

3. The Bail Reform Act of 1984 authorizes judicial officers to grant persons charged with federal offenses release on bail unless it is determined that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person and the community." 18 U.S.C. § 3142(e).

■ 4. If there is probable cause to believe that the defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required or will reasonably assure the safety of the community. 18 U.S.C. § 3142(e).

■ 5. The filing of an indictment by the government against a defendant charging him with such an offense constitutes probable cause. *U.S. v. Suppa*, 799 F.2d 115, 119 (3d Cir.1986).

6. Defendant was charged by indictment with violations of the Controlled Substances Act for an offense for which a maximum term of imprisonment of ten years or more is prescribed, therefore the rebuttable presumption is triggered.

■ 7. Once the presumption arises the burden of production shifts to the defendant to produce some evidence to rebut it. *U.S. v. Jessup*, 757 F.2d 378 (1st Cir.1985).

8. Once the presumption had been triggered and the burden shifted to the defen-

---

**2.** Again counsel for the government did not challenge defense counsel's assertion of this fact, and because this was not contested I will assume for purposes of this determination that it is true.

dant to produce, by failing to require the defendant to produce its evidence the Government failed to rest on the presumption and effectively waived the requirement that defendant rebut the presumption.[3]

■ 9. The presumption does not vanish upon the production of sufficient evidence to rebut the presumption by the defendant, but remains available to be considered by the court in determining whether to release or detain the defendant. *Jessup,* 757 F.2d at 382–384. Thus the burden then shifts back to the government either to prove by a preponderance of the evidence that he is a risk of flight, or to prove by clear and convincing evidence that he poses a danger to the safety of the community. *U.S. v. Himler,* 797 F.2d 156, 161 (3d Cir.1986).

10. The factors which the court must consider in making this determination are set forth in 18 U.S.C. § 3142(g). Section 3142(g) of the Bail Reform Act provides:

(g) **Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current arrest or offense, he was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or Local statute; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

11. The government argued the following as reasons to hold that no condition or combination of conditions of release will reasonably assure the appearance of the defendant: 1) there is substantial circumstantial evidence against the defendant; 2) there is no evidence that defendant was working from 1987 through 1994; 3) defendant is facing a lifetime prison sentence; and 4) that it is clear from the actions of defendant's family and friends that defendant realized that he was wanted and that he was facing life imprisonment, because, for example, he stopped living at his girlfriend's house and hid at her sister's house. Defense counsel argued that defendant was not a risk of flight and: 1) the defendant's friends and family offered to post their property as surety that he will appear; 2) that if defendant had really intended to flee he would not have been in the Eastern District of Pennsylvania; 3) that the evidence against the defendant in this case is de minimis; and 4) that since 1987 defendant has been employed and has not been arrested.

**3.** At the hearing on June 15, 1995, the government did not rest on the presumption that defendant is a risk of flight and a danger to the community that arises under § 3142(e), but instead proceeded to immediately put on its case in chief, assuming that defendant had rebutted the presumption by meeting his burden of production. Therefore, I will now assume that defendant met his burden of production.

Even if defendant were required to meet the burden of production to rebut the presumption, given the relatively light burden necessary for defendant to rebut the presumption under § 3142(e), *U.S. v. Chagra,* 850 F.Supp. 354, 357 (W.D.Pa.1994), citing *U.S. v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986), I find that defendant has met this requirement and has rebutted the presumption that no condition or combination of conditions will reasonably assure his presence as required. I find that defendant has rebutted this presumption because his friends and family are willing to post their property as surety for his appearance, and because Mr. Angelini has also offered to employ the defendant at TCI Construction. *U.S. v. Carbone,* 793 F.2d 559 (3d Cir.1986).

12. I find that the government has proven by a preponderance of the evidence that defendant is a risk of flight. In so finding I rely on the following facts: 1) I find that based on the evidence introduced at the hearing and set forth above the defendant intentionally evaded arrest for five months; 2) although defendant's family and friends are willing to post their property as surety that he will appear, based upon findings of fact # 10, 11, 19 & 20 I find that some of these same people previously aided defendant in avoiding arrest in this case for five months; 3) the only evidence of defendant's employment record is that of his boss, Mr. Angelini, who told Marshal Quinn that the defendant's work schedule was erratic and that he was often out of town; 4) this offense involves a narcotic drug; 5) the prior incident in 1983 when in an apparent attempt to avoid being served with a bench warrant defendant rammed his car into a roadblock put up by the police; and 6) if convicted defendant is facing a mandatory lifetime prison sentence. Relying on these circumstances, as well as the fact that the presumption against release is considered along with the other factors set forth in § 3142(g), *Jessup*, 757 F.2d at 382–384, I find that the government has proven by a preponderance of the evidence that no condition or combination of conditions will assure the presence of defendant as required.

16. Because I have found that the defendant should be detained because the government has proven by a preponderance of the evidence that he is a risk of flight I need not deal with the issue of whether the defendant is a danger to the community.

17. Therefore, because I find that there are no conditions or combination of conditions which will reasonably assure the appearance of defendant as required I will grant the government's motion for revocation of the order of release promulgated by Magistrate Leompora and order that the defendant is detained.

### ORDER

And now, this 20th day of June 1995, it is **ORDERED** that the government's motion for revocation of release ordered by Magistrate Leompora is **GRANTED** and any conditions of release are **REVOKED** and defendant shall be detained pending trial.